[S. F. No. 6739. In Bank.—August 1, 1916.]

TRIEST AND COMPANY et al., Appellants, v. LEO W. GOLDSTONE et al., Respondents.

LANDLORD AND TENANT—SURRENDER OF LEASE—ESTOPPEL.—A surrender of a lease is created by operation of law when the parties thereto do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender made. The surrender operates by way of estoppel independently of the intention of the parties.

ID. — FACTS CONSTITUTING SURRENDER — RELETTING OF PORTIONS OF PREMISES TO OTHER TENANTS.—Where a corporate lessee disposed of its entire stock and retired from business, and four of its five directors and stockholders formed two distinct copartnerships, constituting two distinct entities separate from the corporation, each of which, with the knowledge and acquiescence of the lessor, took a portion of the demised premises and paid rent therefor, a surrender of the original lease was effected, and the corporation was released and discharged from any further obligation thereunder.

ID.—SURRENDER A QUESTION OF FACT.—Whether in any given case there has been a surrender of the lease is a question of fact to be determined in the first instance by the trial court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

D. Freidenrich, and Henry G. W. Dinkelspiel, for Appellants.

Joseph E. Bien, and Milton B. Badt, for Respondents.

SLOSS, J.—The case comes to this court by virtue of an order of transfer, after judgment by the district court of appeal for the first appellate district. The court of appeal, speaking through Mr. Justice Kerrigan, delivered an opinion which reads as follows:

"This is an appeal from a judgment in an action to recover rent alleged to be due according to the terms of a certain lease, judgment went for the defendants, and plaintiffs appeal.

"On July 8, 1907, a lease was entered into between plaintiffs as lessors, and Goldstone Bros., a corporation, as lessee, of the

basement, ground floor and first floor of a building then under construction on Mission street in San Francisco, for the term of ten years from the time of the completion of the building at a total rental of $48,000, payable in equal monthly installments of $400 in advance, on the 1st day of each month.

"The building was completed July 31, 1907, and the corporation went into possession under the lease. At the time of the execution of the lease and continuously thereafter up to the time that the corporation forfeited its charter, defendants were its directors and they also constituted all of its stockholders. The corporation was engaged in the wholesale men's furnishing goods business. On December 1, 1909, the defendants divided among themselves the stock of merchandise belonging to the corporation. The value thereof was about $40,000. They divided among themselves the book accounts as collected, and by the end of the year 1910 there were no assets of any consequence remaining which had not been distributed. At the time the division was made the corporation had no debts and no obligations other than the obligations under the lease. The corporation failed to pay its license tax for the year 1910, and forfeited its charter on November 30, 1910. At the time the merchandise was divided, four of the defendants organized two partnerships. Leo W. and Joseph Goldstone became partners under the firm name of Goldstone Manufacturing Co., and Moses A. and Henry Goldstone became partners under the firm name of Goldstone Bros., and the two partnerships divided between themselves the leased premises, each taking one-half thereof. Commencing with the month of August, 1910, and up to and including the month of March, 1912, each partnership paid to the lessors $200 per month for the one-half of the premises which each occupied, plaintiffs giving to each a receipt for $200 'rent of one-half of premises, 732 Mission street.' During the month of March, 1912, one of the partnerships, Goldstone Manufacturing Co., removed from the premises. The installment of rent which was payable on the 1st of April, 1912, was not paid, and no rent has been paid since that time.

"This action was commenced after the installment of rent for the month of April, 1912, had accrued, to have it adjudged that the withdrawal and division by the defendants among themselves of the capital stock of Goldstone Bros., a corporation, in violation of the provisions of section 309, Civil

Code, was unlawful, and that the defendants be required to account for the capital stock of the corporation so withdrawn and divided and its avails, and that plaintiffs have and recover from the defendants jointly and severally to the full amount of the capital stock so withdrawn and divided, the unpaid rent for the month of April, 1912, and all additional installments of rent which shall accrue and become payable up to the time of the entry of judgment herein. The complaint also contains a prayer for general relief.

"Defendant Jacob Goldstone was served, but failed to answer, and his default was duly entered. The other defendants answered. The cause came on for trial and resulted, as above stated, in a decision in favor of the defendants. A judgment having been entered in accordance therewith, this appeal was taken within sixty days after the entry based upon the judgment-roll, and also a bill of exceptions containing the substance of all of the evidence which was offered and admitted.

"The court found and decided that on the 30th day of November, 1910, the plaintiffs resumed possession of the demised premises, and other persons became tenants of said plaintiffs of said premises. That the other persons who became tenants were the partnership of Goldstone Bros., consisting of Moses A. and Henry Goldstone, of one-half of the premises, and the partnership of Goldstone Manufacturing Co., consisting of Leo W. and Joseph Goldstone, of the other half.

"In addition to what has been said, it appears from the record that the plaintiffs were fully aware of the manner in which the Goldstone Bros. corporation was being dissolved. The place of business of one of the plaintiffs, Triest & Co., was next door on Mission street to the premises occupied by the corporation, and one of the officers of Triest & Co. was not only familiar with the manner in which the defunct corporation gave up its business, but he was very intimate with the members of the corporation, was frequently consulted by them. concerning the dissolution, and there being the possibility of an arbitration proceeding in connection with said dissolution, agreed to act as arbitrator. The plaintiffs were aware that the premises had been subdivided, each partnership taking a certain part of them, and each paying to the plaintiffs $200 a month for the portion occupied by it.

"It is not disputed that the defendants, under the provisions of section 309 of the Civil Code, are liable for the rent reserved in the lease unless there was a surrender by operation of law of the demised premises. We are of the opinion that the evidence is sufficient to sustain the finding of the court that there was such a surrender.

"A surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender made. In this state it has been said that the surrender operates by way of estoppel independently of the intention of the parties. (24 Cyc. 1367; *Ladd* v. *Smith,* 6 Or. 316.)

" 'A surrender is the yielding up of an estate for life or years to the reversioner or remainderman; under the statute of frauds it can be done by express consent of the parties in writing; or by operation of law when the parties do something which implies that the parties have consented. These acts are such as would estop the parties from disputing the fact of surrender and which would not be valid unless the term were ended; as, for instance, a new lease accepted by the tenant, or the resumption of possession by the landlord, if the tenant acquiesces; or the giving of a lease to another; and any act which will amount to an eviction, will estop the landlord and make a formal surrender unnecessary; and while it is said that a surrender by operation of law is by acts which imply mutual consent, it is quite evident that such result is independent of the intention of the parties that their acts shall have that effect.' (*Welcome* v. *Hess,* 90 Cal. 507, [25 Am. St. Rep. 145, 27 Pac. 369].)

"The Goldstone Bros. Co. disposed of its entire stock and retired from business, and four of the five persons who were perhaps liable under the provisions of section 309, Civil Code, to the plaintiffs for the rent reserved in the lease, formed two copartnerships, constituting two distinct entities separate from the corporation, and each of these copartnerships, as we have seen, took a portion of the demised premises and paid rent therefor. This all was without objection and with the knowledge and acquiescence of the plaintiffs, and we therefore entertain no doubt, and accordingly hold, that the evidence is sufficient to sustain the finding of the trial court that the plaintiffs consented to the substitution of the new tenants, whereby the

Goldstone Bros. corporation was released or discharged from any further obligation under the lease. (24 Cyc. 1142, 1370; *Ettlinger* v. *Kruger,* 125 N. Y. Supp. 445; *Fry* v. *Partridge,* 73 Ill. 51; *Page* v. *Ellsworth,* 44 Barb. (N. Y.) 636; *Colton* v. *Gorham,* 72 Iowa, 324, [33 N. W. 76].)

"In the case of *Brayton* v. *Boomer,* 131 Iowa, 28, [107 N. W. 1099], a tenant of a business building sold out his business on an agreement of the purchaser to pay the rent thereafter, and the arrangement was made known to the landlord, who made no objection and tacitly consented thereto. It was held that the original tenant became relieved from liability for rent accruing after that time, the court saying: 'No one will question that the parties to a tenancy, whatever the character, may by mutual consent terminate the same at pleasure, and consent in form of words is not necessary. If the lessor, with knowledge of the assignment, so deal with the parties that his consent to the assignment may fairly be implied—in other words, that he tacitly consented thereto—it is sufficient.'

"The judgment is affirmed."

We are satisfied, upon further study of the record and the arguments of counsel, that the foregoing opinion contains an accurate statement of the facts and a clear and correct disposition of the questions of law arising on these facts.

In granting the application for transfer we were influenced by the thought that the decision of the court of appeal might be in conflict with the doctrine declared in *Samuels* v. *Ottinger,* 169 Cal. 209, [Ann. Cas. 1916E, 830, 146 Pac. 638], and similar cases. (*Bonetti* v. *Treat,* 91 Cal. 223, [14 L. R. A. 151, 27 Pac. 612]; *Brosnan* v. *Kramer,* 135 Cal. 36, [66 Pac. 979].) The rule laid down in these cases is well settled. It is that where a lessee has, by his lease, expressly agreed to pay rent, he is not absolved from this obligation by an assignment of his rights under the lease, even though the lessor may have accepted payment of rent from the assignee.

But we have here no question of assignment. The defense, sustained by the findings of the trial court, was that the plaintiffs had resumed possession of the premises and accepted persons other than the original lessee, as tenants of different portions of the demised premises. In other words, the defendants relied upon a surrender of the lease, and such surrender, as is shown by the authorities cited by Mr. Justice Kerrigan,

may be accomplished by operation of law without any written agreement to that end. Whether in any given case there has been such surrender is a question of fact to be determined in the first instance by the trial court. We entertain no doubt that the conduct of the parties, as set forth in the opinion of the district court of appeal, together with inferences fairly deducible from that conduct, fully justified the finding that was made. If there was a surrender of the lease by the original tenant, and a letting of the premises to other tenants who held thereafter under an oral agreement rather than under the original writing, there was, of course, no assignment of the lease, and the decisions on the effect of acceptance of rent from the assignee have no bearing.

The judgment is affirmed.

Shaw, J., Henshaw, J., Melvin, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.