[Sac. No. 3622. In Bank.—March 1, 1926.]

THE NEW BLUE POINT MINING COMPANY, Appellant, **v.** JACOB WEISSBEIN et al., Respondents.

EDWARD P. FITZSIMMONS, Plaintiff and Respondent, JACOB WEISSBEIN et al., Defendants and Respondents; THE NEW BLUE POINT MINING COMPANY, Cross-complainant and Appellant.

[1] CORPORATIONS—QUORUM—INTERESTED DIRECTORS—VOIDABLE ACTS. If a director necessary to constitute a quorum is interested in the proceedings of a corporation, the corporate act is voidable, but some affirmative act of disaffirmance is necessary on the part of the corporation to take advantage of the irregularity.

[2] ID.—CORPORATE SEAL—DUE EXECUTION—REBUTTAL OF PRESUMPTION.—The presumption of due execution raised by the corporate

---

1. See 6 Cal. Jur. 1084; 7 R. C. L. 480.
2. See 6 Cal. Jur. 686; 7 R. C. L. 668.

seal is overcome where, attached to the instrument in question, is the resolution of the board of directors purporting to authorize its execution, which shows on its face that two of the three directors acting were interested therein.

[3] Id.—Trust Deed—Ratification of Stockholders—Acknowledgment Before Interested Notary Public.—In an action by a corporation to set aside the sale under a trust deed executed by the corporation to certain trustees for the benefit of creditors of the corporation, it is of no importance that the notary public, who took the acknowledgment on the ratification of stockholders attached to the resolution of the directors which authorized the execution of the trust deed, was a preferred creditor of the corporation.

[4] Id.—Trust Deed—Interested Directors—Waiver of Objection. Where two of the three members of the board of directors participating in the passing of a resolution for the execution by the corporation of a trust deed for the benefit of its creditors are directly interested therein as creditors of the corporation, the trust deed executed pursuant to such resolution is voidable at the instance of the corporation, if such objection is interposed within a reasonable time; but the corporation is not at liberty to interpose such technical objection, where for a long period of time it acquiesces in the conduct of the trustees acting under their presumed authority, and said trustees are permitted to assume the burdens attendant upon the upkeep of the property with no word of protest from the corporation or offer to assume those burdens, and the beneficiaries of the trust deed, who as creditors released their claims against the corporation, have suffered a distinct detriment due to the long continued acquiescence of the corporation in the validity of the trust, as the result of which the claims have become barred by the statute of limitations.

[5] Id.—Trust Deed for Benefit of Creditors.—A trust deed executed by a corporation to certain trustees, with power of sale, for the benefit of creditors of the corporation, the excess if any to be paid to the corporation, is not in contravention of section 857 of the Civil Code.

[6] Id.—Consent of Creditors to Sale—Buying of Claims by Purchaser—Fraud—Inference—Findings.—Where such a trust deed contains a requirement that the sale of the property can only be made with the consent of two-thirds of the creditors, the mere fact that the purchaser buys up some of the creditors' claims, procures the consent of holders of other claims sufficient to aggregate in the total two-thirds of the claims, and receives as credit on the purchase price the amounts of his assignments, does not compel the conclusion of fraud, and a legitimate inference

4.  See 25 Cal. Jur. 7.

is that there was no fraud; and where the findings of the trial court in an action seeking to set aside the sale are to the effect that there was no fraud, such findings must stand upon appeal.

[7] ID.—NOTICE OF SALE—ABSENCE OF FRAUD.—Where such a trust deed does not require the trustees to notify the corporation of any negotiations looking to the sale of the trust property, the fact that they do not do so cannot be said to show fraud on their part.

[8] ID.—ACTION TO SET ASIDE SALE—CONSPIRACY—FINDINGS.—In this action by a corporation to set aside the sale under a trust deed executed by the corporation to certain trustees for the benefit of creditors of the corporation, the finding of the trial court to the effect that the purchase of the trust property by the vendees was in good faith and for value was in effect a finding that such sale was not consummated by a conspiracy between the vendees and the trustees to defraud the corporation of its property.

[9] ID. — ABSENCE OF EVIDENCE—FINDINGS UNNECESSARY.—Where no material evidence is to be found in the record which would support findings upon certain issues, findings thereon are unnecessary.

(1) 14a C. J., p. 92, n. 74.   (2) 14a C. J., p. 398, n. 24.   (3) 14a C. J., p. 132, n. 13.   (4) 14a C. J., p. 671, n. 65.   (5) 14a C. J., p. 700, n. 20.   (6) 14a C. J., p. 700, n. 24.   (7) 14a C. J., p. 700, n. 20.   (8) 38 Cyc., p. 1984, n. 78.

APPEAL from a judgment of the Superior Court of Yuba County. E. P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

James F. Sheehan and Charles J. Heggerty for Appellant.

Bert Schlesinger for Respondents.

LENNON, J.—This is an appeal by The New Blue Point Mining Company, a corporation, from the judgment of the superior court of Yuba County, made and entered in two actions which were consolidated by consent and tried together in one action by the trial court. In case No. 4264 appellant appeared as plaintiff and in case No. 4486 the appellant appeared as defendant and cross-complainant.

The facts of the case succinctly stated are these: On the twenty-first day of March, 1902, the New Blue Point Mining Company, the owner in fee of certain mining properties and

rights in Yuba and Nevada Counties, under its corporate seal, executed a deed of trust, designating Joseph Weissbein and Jacob Weissbein as trustees, to secure the payment of an indebtedness due and owing certain creditors. The trust deed specified the uses and purposes of the trust to be (1) the sale of the mining property for a sum not less than $100,000 within a period of five years, and if said property could not be sold for that sum within the designated time, then for such sum as the holders of two-thirds of the amount of the indebtedness against said corporation might agree upon in writing; (2) to pay to one Charles Kitts, a preferred creditor, the sum of $5,130, together with interest thereon; (3) to pay the remaining ten creditors of the mining company various sums, together with interest thereon, which, with the preferred claim of Kitts, aggregated $45,000; (4) to pay the taxes and all other expenses connected with the property, and (5) to repay to the corporation any balance remaining in the hands of the trustees after the payment of all claims and expenses, and to reconvey to the corporation the mining property in the event that said claims should be satisfied by the corporation. This trust deed was signed "New Blue Point Mining Company by P. Campbell, President, Edward Fitzsimmons, Secretary; A. McShane, by his Att'y in Fact, P. Campbell; P. Campbell; Edward P. Fitzsimmons; Albert Rigby." The seal of the corporation was affixed thereto.

There was attached to this trust deed a resolution which authorized the execution of the trust deed. It was passed at a special meeting, regularly called, of the directors and was unanimously passed by the directors present, P. Campbell, Edward Fitzsimmons and Albert Rigby.

A ratification of stockholders was attached to the resolution, which ratification was signed by P. Campbell; A. McShane by his attorney in fact, P. Campbell; Edward Fitzsimmons and Albert Rigby. A. McShane was the holder of 99,968 shares of stock and P. Campbell, Edward Fitzsimmons and Albert Rigby were each holders of five shares. The acknowledgment of the ratification was taken before Charles Kitts, who, it will be remembered, was by the terms of the trust deed a preferred creditor.

Attached to the resolution also were releases of the creditors named in the trust deed of their claims in exchange for the security of the trust deed.

On the same day a deed of grant, bargain, and sale was made and executed to Joseph and Jacob Weissbein, conveying to them all of the real and personal property of the corporation, together with the right to receive the rents, issues, and profits thereof. This deed contained the express provisions that the grantees should hold said property in trust for the uses and purposes specified in said trust deed of even date, which was specially referred to and made a part thereof. This grant deed was recorded in both Nevada and Yuba Counties.

No sale of the property was made within the five years specified in said trust deed. In November, 1909, the Tarr Mining Company, which had entered into possession of the property under an option of purchase for $225,000, paid to the trustees on the purchase price $6,187.50. This amount was distributed by the trustees *pro rata* among the creditors; $18,000 was also advanced by the Tarr Mining Company to finance litigation which had arisen over the title to the water rights belonging to the property. And in 1911 $6,500 more was paid by the Tarr Mining Company to the trustees, which sum was distributed among the creditors. Prior to the last-named payment an agreement was entered into on the thirty-first day of October, 1911, between the trustees, as parties of the first part, New Blue Point Mining Company, as party of the second part, and the Tarr Mining Company, as party of the third part, wherein it was agreed that the Tarr Mining Company should pay the $6,500 immediately and an extension of time for future payments should be made. This agreement also recited the purpose for which the $18,000 had been advanced by the Tarr Mining Company, the fact that the trust deed had been duly made and executed to the trustees and that the New Blue Point Mining Company was indebted on that date to the creditors named in the trust deed in the sum of $60,458.75. This agreement was signed by the trustees, by the New Blue Point Mining Company per Edward Fitzsimmons, secretary, with the seal of the corporation attached, and the Tarr Mining Company, by its president and secre-

tary, and also by the creditors named in said trust deed or by their successors in interest.

The option to purchase was abandoned by the Tarr Mining Company. Thereafter the property remained idle for several years.

In February, 1917, an agreement was entered into between the trustees and Sidney B. Wood for the purchase of the property by Wood for the sum of $75,000. Under this agreement Wood was to go into possession and operate the mine and make payments upon the purchase price at certain specified dates. Subsequent to this agreement the time of the first payment was extended in consideration of the payment by Wood of back taxes on the property amounting to approximately $1,300. Wood operated under his bond for a period of about two years. Receipts from the San Francisco mint show approximately $30,000 in ore was extracted from the mine. Wood testified that the cost of extraction approximated $80,000. In 1919 Wood informed Jacob Weissbein, the surviving trustee, that he could not continue under the agreement, but that he would purchase the property as agent for Warren Delano, a resident of New York, if he could get it for $20,000. Weissbein agreed to the sale of the property at this figure providing two-thirds of the creditors would consent to the sale as provided in the trust deed and provided further that any litigation in which the property was involved should be taken care of by Wood.

Wood proceeded to buy up, as cotenant with one C. M. Schwerin, assignments of some of the claims of the creditors and presented to Weissbein a written consent to the sale of the property for $20,000, with the signature of himself and Schwerin thereon as assignees of certain claims. The claim of J. W. Relley was represented in said written consent by the signature "John Mulroy, att'y in fact for Relley heirs." Weissbein also joined in said written consent, signing "Weissbein Bros. & Co. by Jacob Weissbein." These signatures to the consent represented two-thirds of the amount of the indebtedness against said corporation. Wood having entered into an agreement to indemnify Weissbein against all claims arising from litigation with respect to the property, the latter proceeded with the sale of the property to Warren Delano for $20,000. The deed, which was not introduced in evidence, was evidently executed to Bradley

and Delano or to Bradley in trust for Delano. Subsequent to the sale of the property Jacob Weissbein donated to Wood his claim embodied in the trust deed. Later, Wood procured assignments from certain of the Relley heirs, some of whom had been represented in the written consent.

Weissbein, in settling the account with Wood, gave the latter credit for the assignments which he held and permitted Wood to offset said assignments against the purchase price. Weissbein did not, therefore, receive $20,000 actual cash from Wood, but the balance remaining after deducting the amount of the claims which had been assigned to Wood, which balance was $7,093.59. At the time of the trial Weissbein still retained in his possession $2,380.80 for payment to the Relley heirs when he should be furnished with satisfactory proof that they were the parties entitled thereto.

For the sake of clarity we shall not attempt to set out the various pleadings involved in this controversy. We shall, instead, set out simply and succinctly the allegations contained in the complaint and cross-complaint of The New Blue Point Mining Company relative to the transactions hereinabove detailed. The New Blue Point Mining Company in its pleadings alleged in effect that (1) the trust deed of March 21, 1902, was null and void because (a) the directors Fitzsimmons and Rigby, who voted for the resolution authorizing said trust deed, were disqualified by interest from participating therein, being creditors named in said trust deed; (b) there was no consideration for the execution of the trust deed, the indebtedness therein set out being, in fact, the indebtedness of P. Campbell, and not the indebtedness of The New Blue Point Mining Company, and (c) the execution of the trust was not properly ratified by two-thirds of the holders of the capital stock of the corporation; (2) the trustees came into possession of certain moneys in trust for the corporation, being more particularly (a) the sum of $31,244.50 from the Tarr Mining Company and (b), in conjunction with Wood, the rents, issues and profits which were the output of the mine under the operation of Wood, and (3) the deed by which the sale to Warren Delano for $20,000 was consummated is null and void because (a) it was executed pursuant to a conspiracy between the trustees and Wood, Bradley, and Delano to cheat and defraud The New Blue Point Mining Company out of its

property, and (b) the written consent of two-thirds of the creditors was not secured as required by the trust deed.

The findings of fact and conclusions of law upon both actions were consolidated. Briefly summarized the findings were to the effect that (1) The New Blue Point Mining Company was not the owner in fee simple of the mining property at the commencement of the first action; (2) that the trust deed of March 21, 1902, was properly made and executed and delivered to the trustees named therein; that it was made for a valuable consideration and its making was ratified and confirmed by practically all of the stockholders of the company; (3) the trustees had rendered full accounts and statements to the creditors of all moneys received and expended by them, and that on October 31, 1911, The New Blue Point Mining Company and other persons interested had come to a mutual accounting concerning the moneys received and expended up to that time, and (4) that Bradley and Delano were purchasers in good faith and for value from the trustees. As conclusions of law the court held that (1) by virtue of the grant, bargain, and sale deed from The New Blue Point Mining Company, title to the mining property had vested in the trustees; (2) by virtue of the deed from the trustees to the purchasers for $20,000 the purchasers became the owners in fee of said property, and (3) The New Blue Point Mining Company was not entitled to an accounting from the trustees, from Wood, or from Bradley and Delano, the purchasers.

The two main contentions in support of the appeal are (1) that the findings are not supported by the evidence and (2) certain findings upon issues raised by the cross-complaint were not made by the trial court.

A careful, considerate, and conscientious review of the record satisfies us that the evidence supports the findings, the findings warrant the conclusions of law and they in turn support the judgment.

At first blush it would seem that the argument of appellant that the trust deed was void by reason of the fact that it was not properly executed, in that the resolution authorizing its execution was voted upon by two directors who, as creditors, were interested, had merit. [1] It is the rule that if a director necessary to constitute a quorum is interested in the proceedings the corporate act is voidable. [2]

Although the seal is *prima facie* proof of the execution and authority of the corporation, in opposition to this proof is the resolution, which shows on its face that two of the directors were interested as creditors. The presumption of due execution raised by the corporate seal is, therefore, overcome.

[3] It is of no importance that Kitts who took the acknowledgment was a preferred creditor. It has been decided that the original rule enunciated in *McShane* v. *Carter*, 80 Cal. 310 [22 Pac. 178], to the effect that a ratification of a sale of corporate property must be in strict form as required by Statutes of 1880, page 131, has been liberalized. (*Royal Con. Mining Co.* v. *Royal Consolidated Mines*, 157 Cal. 737 [137 Am. St. Rep. 165, 110 Pac. 123].)

[4] However, we are of the opinion that although it must be said that objections interposed to the validity of the trust deed, if interposed within a reasonable time after the execution thereof would have compelled the conclusion that said trust deed was not valid, nevertheless by reason of the long acquiescence of the corporation in the conduct of the trustees acting under their presumed authority, the corporation is not now at liberty to interpose those technical objections. (*Standard Oil Co.* v. *Slye*, 164 Cal. 435, 445 [129 Pac. 589]; *Main* v. *Casserly*, 67 Cal. 127 [7 Pac. 426]; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67, 71 [34 Pac. 527].)

From March, 1902, until April 24, 1914, when a cross-complaint was filed in an action brought by the Giant Powder Company against Jacob Weissbein, which cross-complaint was dismissed for lack of prosecution, no objection was made by the corporation to the handling of the property by the trustees. The trustees were absolutely permitted to enter into an agreement with the Tarr Mining Company for the sale of the property for $225,000 and were permitted to give to Wood an option to purchase for $75,000 without a word of protest from the corporation although it was cognizant of both deals. The trustees were permitted to assume the burdens attendant upon the upkeep of the property with no word of protest from the corporation or offer to assume those burdens.

Moreover, the beneficiaries of the trust deed, who as creditors released all of their claims against The New Blue Point Mining Company, have suffered a distinct detriment

from the fact that the corporation acquiesced for so long a time in the validity of the trust deed. Their claims are now barred and it is impossible for the corporation, unless it be by paying their claims in full, to put them in as favorable a position as they were in at the time when, relying upon the validity of the trust deed, they released their claims. Irrespective of whether their claims were valid claims against The New Blue Point Mining Company or only against P. Campbell, they were entitled to have their claims adjudicated. Their rights were lost to them by the acquiescence of the corporation in the trust deed until the statute of limitations had run.

There is no evidence that the trust deed was procured by fraud or underhanded, unfair dealing. The participation of the directors is not set up to prevent the directors from gaining an advantage from their own wrong. The irregularity is set up for the purpose of destroying the entire effect of the instrument which will have the effect of cutting off the rights of third persons thereunder. By long silence and acquiescence the corporation has lost its right to avail itself of such objection.

It may also be noted in passing that the California cases, which hold that a director cannot legally form part of a quorum which acts upon a proposition in which he is personally interested, hold that the corporate act in which said director has participated is "voidable." They do not use the term "void" and it would seem, therefore, that some affirmative act of disaffirmance is necessary on the part of the corporation to take advantage of the irregularity.

[5] We are also of the opinion that the objection that the trust deed is void, as being in contravention of section 857 of the Civil Code, is without merit. (*Sacramento Bank v. Alcorn*, 121 Cal. 379 [53 Pac. 813].)

We are satisfied that the accountings by the trustees of the moneys received by them are correct. The two payments received on the purchase price of the property from the Tarr Mining Company were paid *pro rata* to the creditors. The $18,000 advanced by the Tarr Mining Company for the expenses of litigation was paid to the trustees with the express understanding that it was to be used for that purpose and consequently did not belong to either the creditors or the corporation itself. Although it would seem that Wood

should have furnished the surviving trustee with a statement of his receipts and disbursements, there is no evidence that more money was taken from the mine than was expended thereon. The mine receipts show that approximately $30,000 worth of ore was extracted. Necessarily, there must have been cost of extraction, and according to the testimony of Wood this cost amounted to $80,000. Doubtless the trial court, in making its findings relative to the accounting, considered as true this statement.

[6] With reference to the validity of the deed from the trustees to Bradley and Delano there is no evidence, aside from the actual facts of the admitted transactions, to show fraud. There is no evidence that Weissbein conspired with Wood to cheat and defraud the creditors or that he aided and assisted Wood in any way in obtaining the consent of the holders of two-thirds of the claims against the corporation. If it be fraud for Wood to buy up some of the creditors' claims, procure the consent of holders of other claims sufficient to aggregate in the total two-thirds of the claims, and receive as credit on the purchase the amounts of his assignments, then it may be said that the sale was procured by fraud and the deed from the trustees to the purchasers void. The mere statement of the transaction does not, however, in our opinion, compel the conclusion of fraud. The inference, therefore, being legitimate that there was no fraud, the findings of the trial court must stand. [7] The trustees were not required by the terms of the trust deed to notify the corporation of any negotiations looking to the sale of the property, and the fact that they did not do so cannot be said to show fraud on their part.

It is true that, without the consent of the Relley heirs, the necessary consent of the holders of two-thirds of the claims was not secured. The procurement of their consent was a condition precedent to a valid sale of the property. The grant deed to the trustees specified that the trustees were to hold the property for the uses and purposes specified in the trust deed of even date. One of the purposes specified therein was to sell "with the written consent of the holders of two-thirds of the amount of the claims." The purchasers were put upon notice that the written consent of such holders was necessary to a valid sale. Apparently the necessary consent of two-thirds of the claims was procured.

Although the consent of the Relley heirs was given by Mulroy, said heirs make no complaint that he was not authorized to give their consent. Moreover, subsequent to the consent by Mulroy, Wood secured sufficient assignments from the Relley heirs to total, in conjunction with the assignments already held by him, together with the consent of other claimants, two-thirds of the amount of the claims against the corporation. It is a fair inference from the subsequent giving of these assignments that the signing of the consent by John Mulroy was with the consent of the heirs who later gave assignments.

The complaint of the appellant that the trial court failed to find upon certain issues raised by the cross-complaint is, we think, without substantial foundation. It may be noted that the findings of fact and the conclusions of law were consolidated. The affirmative findings of the trial court on certain issues by necessary implication carried with them a negative finding of the truth of facts alleged in opposition thereto. (*Fox* v. *Haarstick,* 156 U. S. 674 [39 L. Ed. 576, 15 Sup. Ct. Rep. 457, see, also, Rose's U. S. Notes] ; *Noble* v. *Beeman-Spaulding-Woodward Co.,* 65 Or. 93 [46 L. R. A. (N. S.) 162, 131 Pac. 1006].) [8] For instance, the finding of the trial court to the effect that the purchase of the mining property by Bradley and Delano was in good faith and for value is in effect a finding that such sale was not consummated by a conspiracy between Weissbein, Wood, Bradley, and Delano, to defraud the corporation of its property. [9] Findings upon other issues were not necessary, for the reason that no material evidence is to be found in the record which would support the findings, if made.

Judgment is affirmed.

Shenk, J., Waste, C. J., Richards, J., Seawell, J., Curtis, J., and Lawlor, J., concurred.

Rehearing denied.