[Civ. No. 14707.   First Dist., Div. Two.   Nov. 19, 1951.]

EMILE NARCISI et al., Respondents, v. H. W. REED, Appellant.

Erwin C. Easton and Mark M. Coleman for Appellant.

Felton L. Watson for Respondents.

GOODELL, J.—This appeal was taken from a judgment awarding respondents $1,684.48 damages, plus a $750 attorney fee, and costs.

On March 1, 1947, a three-year lease was made by respondents as lessors to appellant as lessee, of a meat market stall 8 feet by 48 feet in area, within a market known as the Golden Gate Food Center on San Pablo Avenue in Oakland. The rental was fixed in the lease at $205 for the first month; at $80 a month for the next five months; at $100 for the next six; at $110 for the next 12, and at $125 for the last 12 months.

Appellant paid the rent for the first four months but none thereafter. He also paid his proportion of the utility bills for the whole Food Center—one-third thereof as required by the lease—for March and April, but not thereafter.

The court found that the place was operated as a meat market from March 1 to May 8, but not from May 10 to June 10; that operations were resumed from June 11 to August 17, but that on August 18 appellant "left the demised premises without explanation and never returned to conduct a meat market business thereupon."

On August 26, 1947, respondents served on appellant the following notice: "Please take notice that you have failed to conduct a meat business in the demised space since on or about August 18, 1947; and that the undersigned lessors elect, after three days after the delivery to you of this notice, to enter the demised premises and to operate a meat business thereupon, holding you for the rental accruing monthly under the terms of the lease and for any deficiency in rental and benefits under the lease."

About September 1, 1947, respondents repossessed the place and, as indicated in the notice, proceeded "to operate a meat business thereupon." They continued to operate it, selling meat products and other goods until May 17, 1948, when they leased a part of the place to John C. Lahey for three years commencing on June 1, 1948, at rentals lower than those reserved in appellant's lease.

Appellant's principal contention is that respondents terminated the lease by reoccupying the place, using it for their own purposes, and then leasing a portion of it for a period extending beyond the expiration date of the lease. They

rely on *Welcome* v. *Hess*, 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145], and similar cases. In *Phillips-Hollman, Inc.* v. *Peerless Stages, Inc.,* 210 Cal. 253, 259 [291 P. 178], the court said: ''Ordinarily the reletting of the premises amounts to an election to terminate the lease and to hold the tenant for damages, . . . *The lease, however, may be so drawn as to contain provisions by which the application of that rule may be evaded.''* (Italics added.) That case discusses the New York decisions which recognize that ''. . . a damage clause can be drawn in such a way as to make a tenant responsible for monthly deficits after the re-entry of his landlord . . .'' The lease in the Phillips-Hollman case contained such a provision, and the lease in the instant case does likewise. Section 19 thereof reads:

''19. If default shall be made in the payment of the rent above reserved, or any part thereof, for three (3) days, or, if the lessee after three (3) days notice fails or neglects to perform or observe any of the covenants, agreements or conditions herein contained to be kept by the lessee, the lessors may, at any time thereafter, without notice or demand, declare the said lease terminated and ended and may re-enter in and upon said premises or any part thereof, with or without process of law, and expel, remove and put out the lessee or any person or persons occupying the said premises, using such force as may be necessary to again repossess and enjoy said premises without prejudice to any remedies which might otherwise be used for arrear of rent or precedent breach of covenants, and any claim for damages occasioned by such removal is hereby expressly waived by lessee. It is further understood and agreed that anything to the contrary in this lease notwithstanding, the lessors may give the three (3) day notice to quit hereinbefore in this paragraph mentioned, and require the delivery up of the possession of said premises, and enter into possession of said premises without effecting [sic] the liability of the lessee under the terms of this lease; it being understood and agreed that the lessee shall be liable monthly to the lessors for any rent thereafter to become due under the terms of this lease, or for any deficiency arising from the rental of said premises for any part of the remainder of the term of this lease . . .''

The recent case of *Yates* v. *Reid,* 36 Cal.2d 383 [224 P.2d 8] is directly in point on several grounds. The lease there contained a provision similar in effect to section 19 and, as in this case, *the lessor repossessed the premises and ran the busi-*

*ness for his own account until he found a new lessee.* There a tourist resort was leased on October 15, 1945 at $300 a month for the first three months and $450 a month for the remaining four years. On June 15, 1947, the lessees quit and the lessor resumed possession and operated the resort until April 7, 1948, when he leased it to a new tenant at $300 a month. Shortly thereafter he served on the original lessees a notice declaring the lease terminated and demanding payment of the deficiency resulting under the new lease, and then sued. The trial court held that the abandonment of the premises by the defendants with the subsequent reentry by the plaintiff and reletting to a new tenant amounted to a surrender of the lease by operation of law, which relieved the defendants of their obligations under the lease.

In reversing the judgment the court said:

"The plaintiff contends that his actions were not an acceptance of a surrender by the defendants, since the lease expressly authorized him to reenter and to relet. He relies upon a provision in the lease, which reads:

" 'Should any of the rent reserved be due and unpaid, . . . or should the lessee vacate or abandon said property, . . . the Lessor may, at its option, and without demand or notice of any kind whatsoever, re-enter and take possession of said property and remove all persons therefrom; and should the Lessor elect to re-enter and take possession of said property . . . , said Lessor may, at his option, either terminate this lease and recover from the Lessee all damages caused by the breach hereof of the Lessee, . . . ; or, said Lessor may relet said property or any part thereof, . . . No re-entry of said property by the Lessor, as herein provided, shall be construed as an election on his part to terminate this lease, unless written notice to that effect is delivered to the Lessee. . . .'

"In view of the foregoing provision in the lease it is clear that the reentry by the plaintiff and his subsequent acts in leasing to the new tenant did not constitute an acceptance of a surrender by the defendants.

"The defendants contend that a surrender by operation of law followed necessarily from the conduct of the parties and was unaffected by the terms of the lease. It is true that the conduct of the landlord and tenant may result in a surrender by operation of law. But it is only when their conduct is inconsistent with the rights of the tenant under the lease that such a surrender results. This is illustrated by the cases of *Welcome* v. *Hess,* 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145],

and *Rognier* v. *Harnett*, 45 Cal.App.2d 570 [114 P.2d 654], upon which the defendants rely. It did not appear in either of those cases that there was, as here, a provision in the lease for reentry by the landlord or for reletting upon the tenant's abandonment. Furthermore the doctrine of the Welcome case has not always been applied. (See *De Hart* v. *Allen*, 26 Cal.2d 829 [161 P.2d 453]; and comments in 34 Cal.L.Rev. 252.)

"In the present case the retaking of possession by the plaintiff as landlord and his reletting of the premises were entirely consistent with the rights of the tenants under the lease. The plaintiff did no more than exercise the rights accorded to him. His conduct did not result in a surrender of the lease by operation of law. The provision in the lease was valid and controlling. (*Burke* v. *Norton*, 42 Cal.App. 705 [184 P. 45]; *Brown* v. *Lane*, 102 Cal.App. 350 [283 P. 78]; see *Security Realty Co.* v. *Kost*, 96 Cal.App. 626, 628 [274 P. 608]; *cf. Phillips-Hollman, Inc.* v. *Peerless Stages*, 210 Cal. 253 [291 P. 178].)

"The trial court found as a fact that the plaintiff took possession of the premises and relet them on his own behalf and not for the account of the defendant. The plaintiff contends that the evidence is insufficient to support this finding. The sufficiency of the evidence on this point, however, need not be decided. It is immaterial that the plaintiff reentered and relet for his own account. The terms of the lease gave him the right to do so if he so desired."

On the authority of that case we must reject appellant's contention that respondents acceded to a surrender of the lease or terminated it by reoccupying the place, using it for their own purposes, and later reletting to Lahey.

■ Appellant contends that respondents' action in making the Lahey lease for a term extending (15 months) beyond the original lease showed plainly (as was said in *Welcome* v. *Hess*, 90 Cal. 507, 514 [27 P. 369, 25 Am.St.Rep. 145]) "that he was acting in his own right, and not as their self-constituted agent." *Yates* v. *Reid* also answers that contention where, in referring to *Welcome* v. *Hess* and *Rognier* v. *Harnett*, 45 Cal.App.2d 570 [114 P.2d 654] the court says: "It did not appear in either of those cases that there was, as here, a provision in the lease for reentry by the landlord or for reletting upon the tenant's abandonment. Furthermore the doctrine of the Welcome case has not always been applied. . . . It is immaterial that the plaintiff reentered and relet for his

own account. The terms of the lease gave him the right to do so if he so desired."

Furthermore, the appellant suffered no pecuniary loss, or any other detriment, by reason of the fact that Lahey's lease extended beyond the original term. *Lahey's occupancy during the original term minimized the damages* and no question is raised respecting respondents' good faith in the matter, nor respecting the adequacy of the Lahey rentals, except a complaint that the first two months should not have been rent-free.

The monthly rentals under the Lahey lease were as follows: for June and July, 1948, gratis; $50 for the next 10 months; $60 for the next 12, and $75 for the last 12. The space leased to Lahey was 9 feet by 18 feet instead of 8 feet by 48 feet.

The judgment for damages of $1,684.48 was computed as follows in the findings: rental for July and August, 1947, $160; one third of the total utility bills for May, June, July and August, 1947, $74.48; and "difference between the rental reserved in the lease between the parties and the rental payable by John Lahey, from June 1, 1948 to the end of the term of the lease between the parties, $1450.00." The accuracy of the computation is not challenged. Respecting the period from September 1, 1947, to May 17, 1948, during which respondents occupied the place, the court found that "the plaintiffs sold $1311.19 of packaged meat products and preparations from the demised space, and $435.30 was realized therefrom, which sum is smaller than the rental reserved in the lease for the same period." The rental reserved for that period was approximately $875. No attack is made on these figures by appellant.

We find no error in the record.

The judgment is affirmed.

Nourse, P. J., concurred.