[Civ. No. 25575. Second Dist., Div. Two. Mar. 21, 1962.]

MARION M. WIESE, Plaintiff and Respondent, v. R. A. STEINAUER, Defendant and Appellant.

Karmelich, Felando & Mepham and Robert J. Mepham for Defendant and Appellant.

Clifton A. Hix and Elizabeth Hix for Plaintiff and Respondent.

HERNDON, J.—Appeal by defendant from a judgment in favor of plaintiff after trial by the court without a jury in an action to recover rent under a written lease.

On August 15, 1956, the parties executed a written lease of a dental office in San Pedro. It provided for a three-year term from August 15, 1956, to and including August 14, 1959, for a total rental of $9,900. Defendant, a dentist, entered into possession on August 15, 1956, and occupied the premises until March 15, 1958. He paid rentals totalling $5,775 during the period of his occupancy. These facts were admitted by the pleadings. The complaint alleged, among other things, that there was due, owing and unpaid under the terms of the lease the sum of $4,125, and that under pertinent provisions of the lease plaintiff was entitled to reasonable attorneys' fees in the amount of $1,000. The prayer sought judgment against defendant for $5,244.50 and other incidental relief.

Defendant's answer denied that any amount was due, owing or unpaid under said lease, and denied that $1,000 was a reasonable attorneys' fee. By way of affirmative defense, defend-

ant alleged in substance: That on or about May 20, 1957, the parties orally agreed that defendant would surrender the leased premises on or about March 15, 1958, and plaintiff would resume possession and release defendant from his obligations under the written lease; that on the latter date, plaintiff's agent, Atchison Realty Company, made demand on defendant "to surrender said premises and keys to the building located thereon"; that on March 15, 1958, defendant did surrender them pursuant to the said oral agreement, and has not occupied the premises since that date; that in reliance on the oral agreement, defendant on August 14, 1957, entered into a 10-year written lease of other offices to commence March 15, 1958; that by reason thereof plaintiff should be estopped to deny the terms of the oral agreement and to enforce the lease.

The trial court found that the parties did not orally agree that defendant would surrender the premises, or that plaintiff would resume possession and release defendant from the lease; that plaintiff was not estopped to deny the agreement or to enforce the lease; that defendant was entitled to credit for $742.50 rentals received by plaintiff after she relet the premises during the term of the lease, and that $700 was a reasonable attorneys' fee. The judgment awards plaintiff $3,382.50—the difference between $9,900 and the sum of $5,775, the total of the rental paid by defendant, plus $742.50 for rents received by plaintiff after reletting the premises. In addition, the court allowed plaintiff attorneys' fees in the amount of $700.

Appellant's principal contention is that the evidence does not support the findings, and that the evidence required findings to the effect that respondent terminated the lease by repossessing the premises, using them for her own purposes and then reletting them to new tenants for a period extending beyond the expiration date of the lease.

■ Appellant's arguments manifest a failure to recognize the settled rule that in determining the sufficiency of the evidence to support the findings, the appellate court must accept as true all facts and all inferences favorable to respondent which find substantial support in the evidence. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231].) In other words, we must view the record in the light most favorable to respondent, and recognize that determining the credibility of witnesses and assessing the weight to be given their

testimony are matters solely within the province of the trial court. In his recital of the facts, appellant views the testimony in a light much more favorable to himself than the trial judge was required to do.

In May 1957, while appellant was doing some dental work for respondent, he mentioned to her his desire to move his offices, and ''to make a deal'' with her in respect to the lease. She went to her real estate broker, Mr. Atchison, and discussed the matter with him. She then returned to appellant's office and told him that it would be all right with her provided that another tenant could be secured, and that she did not lose any money. Appellant's own testimony provides substantial support for a finding that respondent agreed to release him only on condition that a new tenant be found and that she would lose no money. On his deposition, appellant testified as follows: ''Q. Did she say anything further? A. Not that I recollect. Q. Did she say in substance and effect that that would be all right with her if she didn't lose any money? A. *Not at that time.* She said nothing about it. She said she would not hold me to the lease if I felt I could better myself, that's all there was to it. It was all that was said. Q. You say 'not at that time.' When did she tell you it was all right as long as she didn't lose any money? A. That would be pretty hard for me to recall and I don't recall that she said it *in those exact words.* She said that we had better hurry and get this place leased, because there was a sign up in front of the place stating that it would be for lease about March 1st of 1958.'' (Emphasis added.)

On August 14, 1957, appellant entered into a lease of another office to commence on March 15, 1958. In September 1957, in an effort to assist appellant in securing a tenant for the balance of the lease, Atchison placed a ''For Rent'' sign in front of the building, stating that it would be available on March 15, 1958. Atchison also advertised the premises by a brochure dated March 13, 1958, which he sent to numerous dentists. After appellant vacated the premises, the keys were either picked up by someone from Atchison's office, or they were left with Atchison by appellant.

On April 15, 1958, an agent for respondent called on appellant to collect the rent. He advised respondent that he was unable to collect. Respondent tried to call her attorney who was out of town at the time. Appellant received written notice of default on June 26, 1958, in a letter from respondent's attorney. After appellant had vacated the premises,

respondent reentered, made various repairs and alterations, and in December of 1958 she relet the premises for a five-year term, to commence in May of 1959. This action for the balance of rent was filed in October of 1959, after the term of appellant's lease had expired.

"It is the duty of a defendant to plead matters which are not provable under a general or specific denial but which avoid the action or at least the theory outlined in the complaint. If the burden of proof is thrown upon the defendant (Code Civ. Proc., § 1981) the matter pleaded comes under the general heading of new matter, which must be proved with the purpose of defeating plaintiff's case. (*Dieterle* v. *Bekin,* 143 Cal. 683 [77 P. 664].) Whether defendants failed to prove the new matter is a question to be determined by the trial court. Appellate courts are interested only in examining the record to determine whether there is any substantial evidence to sustain the conclusion reached by it." (*Gularte* v. *Martins,* 65 Cal.App.2d 817, 820 [151 P.2d 570].)

In *Rognier* v. *Harnett,* 45 Cal.App.2d 570 [114 P.2d 654], at page 572, it is stated: "Whether in any given case there has been a surrender of leased premises by a lessee and an unqualified acceptance of possession by the lessor are primarily questions of fact to be determined by the trial court from the whole transaction. (*Steel* v. *Thompson,* 59 Cal.App. 191 [210 P. 430] ; *Triest & Co.* v. *Goldstone,* 173 Cal. 240 [159 P. 715].)''

" 'A surrender of demised premises occurs only through the consent or agreement of the parties evidenced either by an express agreement or by an unequivocal act inconsistent with the terms of the lease and with the relation of landlord and tenant, or by acts so inconsistent with the terms of the lease as to imply in law an agreement to surrender, and hence, an acceptance by the landlord is requisite.' '' (*Martin* v. *Cassidy,* 149 Cal.App.2d 106, 111 [307 P.2d 981], 32 Am.Jur. § 901 p. 763.)

" 'Abandonment is a question of intention, to be determined only upon an investigation of all the facts and circumstances, and the trier of fact is ordinarily the exclusive judge of the existence of the elements thereof, including the cardinal element of intention.' '' (*Martin* v. *Cassidy, supra,* at p. 111; 1 Cal.Jur.2d, § 13, p. 15.)

Appellant's first contention is that the evidence does not support the finding that respondent did not orally agree to release him from the lease. There is no merit whatsoever

in this contention. We have recited evidence which obviously furnishes abundant support for the challenged finding. It also supports the necessarily implied finding that respondent's testimony was true, and that the oral agreement was that appellant would be released only on condition that a new tenant be found and that respondent would lose no money. As we shall later show, the placing of the "For Rent" sign on the premises by the real estate agent and the sending of the advertising brochure were consistent with evidence that appellant and the real estate agent were cooperating in seeking a new tenant.

Appellant's second contention is that the evidence required findings to the effect that respondent accepted his surrender of the leased premises and terminated the lease by repossessing the premises, making repairs and alterations and reletting them to new tenants for a period extending beyond the expiration date of his lease. The complete lack of merit in this contention is demonstrated by the decisions in *Yates* v. *Reid,* 36 Cal.2d 383 [224 P.2d 8] and *Narcisi* v. *Reed,* 107 Cal.App.2d 586 [237 P.2d 558]. Both the last-cited decisions recognize the rule that ordinarily a reletting or any act inconsistent with the rights of the tenant under the lease amounts to an election to terminate the existing lease. They hold, however, that the lease may be so drawn as to contain provisions by which the application of that rule is avoided. Both decisions quote the pertinent provisions of the leases there involved. They are very similar to the following provisions of the lease involved in the instant case:

"That the lessee will pay the said rent reserved to the lessor at the office of the lessor, or at such other place or places as may be designated from time to time by the lessor, at the times and in the manner provided as aforesaid for the payment thereof, without deduction or delay; and that in the event of the failure of the lessee so to do, or in the event of a breach of any of the other covenants or agreements herein contained on the part of the lessee to be kept and performed, it shall be lawful for the lessor, after giving to the Lessee a three day written notice of default, to re-enter into and upon the said premises, and every part thereof, and to remove all persons and property therefrom, and to repossess and enjoy the said premises. Any re-entry or re-possession of said premises by the lessor, or any notice served in connection therewith, or for money due the lessor hereunder, shall not

operate to release the lessee from any obligations under this lease, except with the written consent of the lessor.

"If the lessee shall be in default in the performance of any condition, covenant, or agreement herein contained, or shall abandon or vacate said premises, besides other remedies or rights the lessor may have, it shall be optional with the lessor, after giving said three day written notice of default, to relet the said premises, or any portion thereof, for such rent and upon such terms as the lessor may see fit, and if a sufficient sum shall not be thus realized after paying the expenses of such reletting and collecting to satisfy the rent hereby reserved, the lessee agrees to satisfy and pay any deficiency, and to pay the expenses of such reletting and collecting, including any and all attorney's fees and real estate commissions. All remedies herein given the lessor shall be cumulative and in addition to any other legal and equitable rights which the lessor may have."

In *Yates* v. *Reid, supra*, 36 Cal.2d 383, the lessor repossessed the premises and ran the business for his own account until he found a new lessee. In that case a tourist resort had been leased on October 15, 1945, at $300 a month for the first three months and $450 a month for the remaining four years. On June 15, 1947, the lessees quit and the lessor resumed possession and operated the resort until April 7, 1948, when he leased it to a new tenant at $300 per month. Shortly thereafter he served on the original lessees a notice declaring the lease terminated and demanding payment of the deficiency resulting under the new lease, and then sued. The trial court held that the abandonment of the premises by the defendants with the subsequent re-entry by the plaintiff and reletting to a new tenant amounted to a surrender of the lease by operation of law, which relieved the defendants of their obligations under the lease. In reversing the judgment, the Supreme Court, in an opinion by Mr. Justice Shenk, declared (pp. 385-386):

"The defendants contend that a surrender by operation of law followed necessarily from the conduct of the parties and was unaffected by the terms of the lease. It is true that the conduct of the landlord and tenant may result in a surrender by operation of law. But it is only when their conduct is inconsistent with the rights of the tenant under the lease that such a surrender results. This is illustrated by the cases of *Welcome* v. *Hess*, 90 Cal. 507 [27 P. 369, 25 Am.St. Rep. 145], and *Rognier* v. *Harnett*, 45 Cal.App.2d 570 [114 P.2d 654], upon which the defendants rely. It did not appear

in either of those cases that there was, as here, a provision in the lease for reentry by the landlord or for reletting upon the tenant's abandonment. Furthermore the doctrine of the *Welcome* case has not always been applied. (See *De Hart* v. *Allen,* 26 Cal.2d 829 [161 P.2d 453] ; and comments in 34 Cal. L.Rev. 252.)

"In the present case the retaking of possession by the plaintiff as landlord and his reletting of the premises were entirely consistent with the rights of the tenants under the lease. The plaintiff did no more than exercise the rights accorded to him. His conduct did not result in a surrender of the lease by operation of law. The provision in the lease was valid and controlling. [Citations.]"

In *Narcisi* v. *Reed, supra,* 107 Cal.App.2d 586, the court affirmed a judgment in favor of plaintiffs, the lessors, rejecting the contention of the appellant lessee that the lessors had terminated the lease by reoccupying the place, using it for their own purposes, and then leasing a portion of it for a period extending beyond the expiration date of the lease. The court quoted at length from *Yates* v. *Reid, supra,* and declared (pp. 590-591) :

"Appellant contends that respondents' action in making the Lahey lease for a term extending (15 months) beyond the original lease showed plainly (as was said in *Welcome* v. *Hess,* 90 Cal. 507, 514 [27 P. 369, 25 Am.St.Rep. 145]) 'that he was acting in his own right, and not as their self-constituted agent.' *Yates* v. *Reid* also answers that contention where, in referring to *Welcome* v. *Hess* and *Rognier* v. *Harnett,* 45 Cal.App.2d 570 [114 P.2d 654] the court says: 'It did not appear in either of those cases that there was, as here, a provision in the lease for reentry by the landlord or for reletting upon the tenant's abandonment. Furthermore the doctrine of the *Welcome* case has not always been applied. . . . It is immaterial that the plaintiff reentered and relet for his own account. The terms of the lease gave him the right to do so if he so desired.' "

▮▮▮▮ Appellant complains that respondent failed to give him a three-day written notice of default before reentering. It is to be remembered that the questions whether there has been an abandonment by the lessee and an acceptance by the lessor are questions of intention to be determined only upon an investigation of all the facts and circumstances, and the trier of fact is ordinarily the exclusive judge of the exist-

ence of the elements thereof including the cardinal element of intention. (See *Martin* v. *Cassidy, supra,* 149 Cal.App.2d 106, 111, and authorities there cited.)

In view of the record, the trial court was amply justified in finding that respondent did not intend to release appellant, and that appellant understood that respondent reentered under their oral agreement that he would not be released until a new tenant was found so that she would lose no money.

The obvious purpose of the notice of default prior to the lessor's reentry is to afford the lessee an opportunity to cure the default. Here appellant quit the premises and turned the keys over to the real estate broker, knowing that the broker was seeking a new tenant. For several months he had been cooperating with the broker in efforts to that end. The broker testified that he posted the "For Rent" sign for appellant's benefit. Appellant knew that he would have to pay the rent until a new tenant was secured because both the lease and the oral agreement so provided. It is undisputed that appellant received written notice of default months before the reletting of the premises.

Moreover, the provisions for the three-day notice of default reasonably could be construed as intended only to comply with the requirement of section 1161, subdivision 2, Code of Civil Procedure, that a three-day notice to perform or quit be given before the commencement of eviction proceedings. Since appellant had vacated the premises, and in view of the record of the entire transaction, the trial court reasonably concluded that the giving of the three-day written notice of default before respondent reentered was unnecessary.

Appellant argues that the findings are insufficient in that the court did not make specific findings with respect to the allegations of his affirmative defense to the effect that Atchison demanded surrender of the premises and the keys thereto, and that appellant did surrender them pursuant to the oral agreement and demand. The court specifically found that appellant's version of the oral agreement was untrue. There is absolutely no evidence in the record that respondent, or her agent, ever demanded possession of the premises on or prior to March 15, 1958. Indeed the record shows that no such demand was made. There is no evidence that respondent's agent demanded the keys. Appellant testified that after he had vacated the premises, someone from the real estate broker's office came to his new office and "collected them."

Appellant's contention must be rejected for several reasons.

In the first place, the mere taking of the keys by the lessor does not effect a surrender unless it is done with that intent. (*Yates* v. *Reid, supra,* 36 Cal.2d 383; *Narcisi* v. *Reed, supra,* 107 Cal.App.2d 586; *Anheuser-Busch Brewing Assn.* v. *American Products Co.,* 59 Cal.App. 718, 721 [211 P. 817].) Here the keys were delivered to the broker who was cooperating with appellant in seeking a new tenant. In the second place, appellant had the burden of proof on the issue, and where there is no evidence to support an allegation, it is unnecessary to make a finding on the issue thereby presented. (*Baca* v. *Baca,* 128 Cal.App.2d 848, 850 [276 P.2d 609]; *New Blue Point Min. Co.* v. *Weissbein,* 198 Cal. 261, 272 [244 P. 325].) In the third place, the absence of a finding on a subordinate issue does not affect the validity of a judgment fully supported by the ultimate findings on the determinative issues. (48 Cal.Jur.2d, Trial, § 287, p. 290.) The judgment under review is supported by specific findings on every essential issue.

 Appellant's final contention is that the findings are insufficient in that they simply state that the allegations contained in certain numbered paragraphs of his affirmative defenses "are not true." He argues that this is a negative pregnant, implying that some of the allegations are true and some false. We think that the findings here questioned are not so phrased as to constitute a negative pregnant. In both the cases relied upon by appellant (*Auerbach* v. *Healy,* 174 Cal. 60 [161 P. 1157] and *Williamson* v. *Clapper,* 88 Cal. App.2d 645 [199 P.2d 337]) the findings in question begin with language to the effect "that it is not true" followed by recitals coupled with the conjunctive. The reasonable construction of the findings here questioned is that all of the allegations of the indicated paragraphs of the answer are found untrue.

 In any event, the decision in *Johndrow* v. *Thomas,* 31 Cal.2d 202 [187 P.2d 681], furnishes a complete and decisive answer adverse to appellant's contention. The discussion at page 208 of the last-cited decision is particularly applicable. It holds that even in cases where the findings contain a negative pregnant, they should be liberally construed to support the judgment if it is reasonably possible. Findings should be construed as a whole, in the light of the pleadings and the record, and so as to uphold rather than defeat the judgment. The findings in the present case present no

problem; they are clearly sufficient. (See *Blackburn* v. *Blackburn*, 160 Cal.App.2d 301, 303 [324 P.2d 971].)

The present lease provides that in case suit is brought for the recovery of any rent due thereunder, "the lessee will pay to the lessor a reasonable attorney's fee, which shall be fixed by the court as a part of the costs of such suit." Respondent will recover such additional attorney's fees for services on appeal as the trial court finds reasonable after appropriate proceedings. (See *Genis* v. *Krasne*, 47 Cal.2d 241, 248 [302 P.2d 289]; *Downer Corp.* v. *Union Paving Co.*, 172 Cal.App.2d 126, 129 [342 P.2d 64].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.