JORGE L. MARTÍNEZ VÉLEZ, Plaintiff and Appellee, *v.*
ANA MARÍA GARCÍA, Defendant and Appellant.

No. 11335.    Argued November 3, 1954.—Decided November 14, 1955.

*Luis R. Apellániz* for appellant.    *Luis Miranda Correa* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

Jorge L. Martínez Vélez filed a complaint in the Superior Court, San Juan Part, against Ana María García praying for the revendication of an urban property, house and lot, as well as the fruits that such property yielded or should have yielded.   In the first cause of action he alleged, in brief, that he was the owner in fee simple of the property because he had purchased it from Rafael Ubiles Olmeda, defendant's husband—who in turn had acquired it while he was single— by public deed recorded in the Registry of Property and that the defendant occupied it unlawfully, refusing to surrender it.   In the second cause of action he alleged that he had been deprived of receiving the property rent figured at $50 monthly for the months of June to December 1952 and from January to February 1953, equivalent to $450.   The defendant answered denying the essential averments of both causes of action, and set up as a defense that, prior to the date of her marriage to Ubiles Olmeda, she lived with him in concubinage giving birth to two children; that during the concubinage Ubiles Olmeda acquired the property described in

the complaint for the sum of $2,150 and that since then the defendant, with her own effort and labor has helped physically and financially to improve it and to raise its market value; that both agreed orally that they would not sell the property, in order to keep it for their children, and that before Ubiles alienated the property to the plaintiff the defendant told the latter that she objected to the sale, informing him of the oral agreement between her and her husband. The case was heard and decided by judgment from which the defendant alone appealed. She challenges it, contending that the trial court committed three errors.

In her first assignment she states that the judgment "is contrary to law whereby the action of revendication does not lie." Rafael Ubiles Olmeda bought the property in question while living in concubinage with the appellant. That condition subsisted from 1940 until 1950 when they contracted marriage. The money used by Ubiles to buy the property was money he received as compensation for damages suffered in an accident, and there is no controversy concerning the fact that the money belonged to him. The appellant did not contribute a single cent for the acquisition of the real property Ubiles Olmeda recorded the property in his name in the Registry of Property as a separate property. After acquiring it and while the concubinage existed, the house was improved partly with appellant's money which she received from her work in a sewing shop and from other small activities in which she was engaged. Apparently, in 1952 Ubiles Olmeda and the appellant had a marital mix-up. In June of that same year Olmeda sold the property to the appellee without his wife appearing in the deed of sale. The real property was recorded in the registry in the name of the purchaser. Months later he brought this suit.

The trial court, after hearing and weighing the evidence introduced by the parties, held that the action of revendication issued in view of the fact that the appellee had proved that he was the owner of the property because he

had acquired it from "the person appearing in the Registry of Property with full power to dispose of the same," "Plaintiff's title being valid. . . ." It concluded, however, that the appellant had contributed money of her own to improve the house in a sum which it estimated at $1,250 and that "equity and fundamental legal principles impose the obligation of refunding to the defendant that sum which she invested in the property," and imposed that obligation on the appellee. It admitted that the appellee had been deprived of the use of the property "since June 1952 until now, that is, for a period of about 18 months during which time the . . . property has been occupied by the defendant," holding that "The reasonable value of the rent of the . . . house in the rental market . . . is fifty dollars ($50) per month, plaintiff having failed therefore to receive about NINE HUNDRED DOLLARS ($900) rent," and that the appellant was entitled to half of such amount because, since she "was entitled to be refunded the sum invested in the property, half of those fruits belong to her." For that reason it held that the appellee should only receive $450, which sum would be deducted from the $1,250 which the court estimated as the contribution made by the appellant for improvement of the property. Consequently, it ordered the appellee to deposit in the court the amount of $800 which would be delivered to the appellant once she proved that she had vacated the property.

As we have said, there is no controversy as to the fact that the real property was acquired by Ubiles Olmeda with money exclusively his own while living in concubinage with the appellant. Appellant's basis for contending that the trial court erred in sustaining the action of revendication is that after Ubiles purchased the property she contributed —while living in concubinage with him [1] her capital and labor to make substantial improvements in the house, having

---

[1] Appellant testified that in 1950 when she married Ubiles the house had already been repaired and that on the day of the trial it was in the same condition as in 1950.

agreed with him *"in investing her money and labor in improving the property, under the condition that they would share equally the ownership of the property and that it would not be sold without her consent,"* [2] thus creating a community of property by agreement whereby Ubiles could only sell his undivided share in the property and not the share corresponding to the appellant, the appellee having been informed prior to his acquisition of such property that the appellant claimed to be the co-owner. She avers that this is obvious if we consider her testimony concerning the existence of the agreement creating the community, together with the findings of the trial court to the effect that "the improvements made in the property were realized in part with separate money of the defendant," and that "Rafael Ubiles Olmeda and the defendant lived in concubinage since the year 1940 and contracted marriage in 1950." (Italics ours.)

The court did not commit the error assigned. Unquestionably it reached the conclusions stated by the appellant but it concluded that the appellee had purchased the property validly from the party entitled to alienate it. In other words, that he acquired it without there being any circumstance which might deprive him of the status of a *bona fide* purchaser from the person who according to the Registry had a right to sell the property. With this view we cannot disagree.[3] Although the court reached no specific conclusion

---

[2] While appellant alleges in her answer to the complaint, as has been noted, that she helped Ubiles physically and financially to improve the property and increase its market value, both having agreed not to sell it, she testified at the trial on one occasion that "I gave him all the money that I received from my activities to improve the house, having in mind that it was for both of us . . . ," and on other occasions, that there was an agreement between Ubiles and her that the property belonged to both of them, without Ubiles being able to sell it without her consent.

[3] ". . . a community interest in property therefore cannot be predicated solely on concubinage", *Torres* v. *Roldán,* 67 P.R.R. 342. Likewise the mere fact that one of them gives money to the other to improve a property belonging to the latter does not create a community of property. This is constituted where a man and woman living in concubinage agree, expressly or impliedly, that they will pool their earnings and share equally

to the effect that it was not established that the appellant was co-owner of the property, or that such fact had been proved but not the actual knowledge of its existence by the appellee, the affirmative findings of the trial court acknowledging Ubiles' right to alienate, and appellee's right to purchase, and the fact that it confined itself to impose on the latter the personal obligation of paying to the appellant the amount of her contribution—to which pronouncement we shall hereafter refer—contain by necessary implication the negative finding that it did not give credit to the evidence adduced to challenge the appellee's title and question his right to revendicate, *Fox* v. *Haarstick*, 156 U. S. 674; *Blue Point Minning Co.* v. *Weissbein*, 244 Pac. 325 (Cal.), which right in our opinion was correctly acknowledged.

It is alleged in the second assignment that the court erred "in finding that the appellant invested in the property the sum of $1,250", contending that said sum is less than what she actually invested. There is no need to decide whether such sum should have been increased, since the court could not impose on appellee the obligation to pay any sum to the appellant on account of her contribution to improve the real property, or recognize a right to half of the rental. These errors, however, cannot be corrected on appeal since the plaintiff did not appeal from the judgment containing those pronouncements. *Puig et al.* v. *Succession of Polanco*, 16 P.R.R. 705; *F. Gavilán & Cía.* v. *Garriga and Hijos, et al.*, 38 P.R.R. 372.[4]

---

the ownership of property purchased with such earnings and, in such event, "the courts will require *the party* retaining more than his share as provided in the agreement to disgorge the same." *Torres* v. *Roldán, supra.* In that case, regarding the division of community property, we also stated that ". . . even in the absence of such an express or implied agreement, in order to avoid unjust enrichment of the defendant, the plaintiff is entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition."

[4] If there were any obligation of paying the appellant what she invested to improve the property, it would fall on Ubiles Olmeda and not on appellee.

760

The third assignment in which appellant complains that the court erred in "finding that the reasonable value of the property described in this case is $50 per month" is directed to the weighing of the evidence and is completely devoid of merits.

The judgment appealed from will be affirmed.

Mr. Justice Belaval did not participate herein.