JACOB F. MILLER, W. C. COLEY, AND GEORGE H. HARRISON *v.* EDWARD T. STEEN, AND PHILO DOWD.

WHEN A CONTRACT TO LEASE BECOMES A SALE.—A contract by the terms of which one party purports to lease to another for a time certain, personal property, and deliver. him possession thereof, the other party agreeing to pay him stipulated sums as monthly rent for the use of the property, and further providing that if the lessee fails to pay the rent the lessor may take possession of the property and terminate the lease, but that if the lessee pays the rent he shall become the owner of the property, is a contract of sale, with stipulations giving the vendor security for the payment of the purchase money.

SAME.—Time is not of the essence of such contract, and if default is made in one or more of the payments, the vendor is not entitled to have the property, and the money already paid by the vendee.

RIGHTS OF VENDOR.—In such case, if the vendor, upon default, is entitled at his option either to rescind the contract or retake the property and hold it as secu-

rity, and he does retake the property without rescinding, he may have it sold in a proper proceeding to pay the balance of purchase money due.

RESCINDING CONTRACT.—If the vendor rescinds, he must put the vendee in *statu quo*, by returning the portion of the purchase money paid.

RIGHTS OF VENDEE. — If the vendor retakes the property after default, without rescinding, the vendee, before a sale to pay the balance of purchase money, may pay or tender the full amount due, and thereby become entitled to the property.

DEFECTIVE FINDINGS.—A party requiring a finding as to any fact in issue, should specify the point upon which he desires a finding, without dictating how the fact shall be found.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendants entered into the following contract with the plaintiffs:

" This indenture, made the eighteenth day of June, in the year of our Lord eighteen hundred and sixty-three, between Edward T. Steen, of the City of San Francisco, State of California, party of the first part, and J. F. Miller, W. C. Coley and George H. Harrison, of the City of San Francisco, State of California, party hereunto of the second part; Witnesseth: That the said party of the first part does hereby lease, demise and let unto the said party of the second part, the following described property, goods, and chattels, being the property of Edward T. Steen, of San Francisco, State of California, now situate, lying, and being in the shop occupied by said Steen, at No. 35 Fremont street, in the City of San Francisco, in the County of San Francisco; that is to say, one steam engine, 8 inches bore by 16 inches stroke, with link motion, fly wheel, shaft, etc., complete; one steam boiler, three feet diameter by eighteen 8-12 feet long, with two twelve-inch flues, chimney, grate bars, fire front, cocks, valves, Giffard's injector, and all the appurtenances belonging therewith; one hoisting drum, gears and shaft complete; two shrieves for rope to run over in hoisting from shaft; ten of the largest pieces of said machinery being stamped " E. T. Steen;" said machinery shall not be removed more than twelve miles from the City Hall in San Francisco, without the written consent of the first party or

his assigns, and shall not be made a part of the realty of any party or person whatever.

"To have and to hold the premises above described unto the said party of the second part, their executors and administrators, for the term of four months from the 27th day of June, 1863, to the 27th day of October, 1863; yielding and paying therefor the rent in advance of one thousand ($1,000) dollars for the first month, two hundred ($200) dollars for the second month, two hundred and fifty ($250) dollars for the third month, two hundred and sixty-five ($265) dollars for the fourth month, and three hundred and thirty-five ($335) dollars for the fifth month; all payable in United States gold coin.

"And the said party of the second part does for their executors and administrators, covenant, promise and agree to and with the said party of the first part, his executors, administrators and assigns, in manner and form following: That is to say, that they will well and truly pay the said rent in the manner and at the time above provided, and will surrender and deliver the said goods and chattels to the lessor, or his attorney, peaceably and quietly, at the end of the term, in as good order and condition (reasonable use and wearing thereof excepted) as the same are now or may be put into; and to pay the rent as above stated during the term specified, and not make or suffer any waste thereof, nor lease, nor underlet, nor permit any other person or persons to occupy or use the same, or make or suffer to be made any alteration therein, but with the approbation of the lessor or his assigns thereto in writing having been first obtained, and that the lessor or his assigns, may enter the house or premises where the same at any time are, to view the same, and if the lessee shall fail to pay the rent as aforesaid, or make or suffer any injury or waste thereof, or fail to deliver the same to the lessee at the end of the term, the lessor, or his agent, attorney or assigns may enter any place where said property is, and take possession of the same and remove it, using all such force as is necessary for the purpose, without being liable to any action therefor. And should default be made in the payment of any portion of said rent

when due, and should the same remain unpaid for three days thereafter, the said lessor, his . agent, attorney or assigns may enter into any place or store where said goods and chattels are and with such force as aforesaid, take possession thereof, and at option terminate this lease, which is hereby made assignable by the first party.

"It is stipulated and agreed that if the above described rents are fully paid as specified, in United States gold coin, all the machinery, boiler, etc., therein described, or in any way belonging, or connected therewith, shall be and become the property of the second party without further consideration or payment to the first party, or his assigns.

"In witness whereof, the parties to these presents have hereunto interchangably set their hands and seals the day and year first above written."

The commencement of the lease was subsequently changed to the 3d of July, 1863, thus making it expire November 3d, 1863. The plaintiffs took the engine to San Mateo County, and used it in mining. About the first of October, 1863, the defendants went to the mine and took away the engine, and carried it to San Francisco. The plaintiffs sought in this action to recover judgment for a return of the property, or if return could not be had, for twelve hundred dollars, the amount of purchase money they had paid, and for damages. The defendants recovered judgment, and the plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*W. W. Chipman*, for Appellants, argued that the agreement was a sale and merely gave the vendor security for the purchase money, and that it was the duty of the vendor to have either foreclosed by judicial proceeding or to have proceeded to a sale of the property upon public notice at public auction, and cited *Wilson* v. *Brannan*, 27 Cal. 258. He also argued that time was not the essence of the contract, and that where time admitted of compensation, as it always did where money was not paid at a particular pay, it was never essential, nor

were prior payments forfeited nor the bargain rescinded by a failure to pay on the day stipulated, and cited *Gillett* v. *Maynard*, 5 John. 87 ; *Powers* v. *North*, 15 Sergt. & Rawle, 16 ; *Franklin* v. *Miller*, 4 Adolph. & Ellis, 599 ; *Holdridge* v. *Gillespie*, 2 John. Ch. 30 ; and *Henry* v. *Davis*, 7 John. Ch. 40.

*C. Hartson*, for Respondents, argued that if the agreement was a lease, then respondents had a right to reclaim the property, and that it was not a mortgage, as appellants had no property in the engine to mortgage ; but that if it was a conditional sale, then the conditions precedent to title vesting had not been complied with, and on the last proposition cited *Segman* v. *Burnett*, 17 Mass. 269 ; Story on Sales, Secs. 251, 252 ; 1 Young & Collyer, 415 ; 1 Sugden on Vendors, 357.

By the Court, SAWYER, J. :

The contract in question was substantially a contract of sale. Such must be the legal construction upon the face of the instrument evidencing the agreement. The parties call it a lease, but such is not the legal effect. There were certain stipulations, intended, doubtless, as security for the payment of the purchase money, among them, for a right to retake possession in case of default in any of the payments, and an option in the vendor to terminate the contract. One thousand dollars were paid on delivery of the property, (a steam engine, etc.,) and the first monthly instalment of two hundred dollars was paid when due ; but there was a default in the payment of the second and third monthly instalments, which fell due on the 3d of September, and 3d of October, respectively. More than three days having elapsed after the October payment fell due, the vendor, upon the ninth of that month, in pursuance of the stipulations of the contract, took possession of, and removed the property. On the 3d of November, the last instalment of three hundred thirty-five dollars fell due, and, on that day plaintiffs tendered the full amount due, including the two preceding payments, and demanded the property. We think the

District Court erred in holding time to be of the essence of the contract, and the judgment based upon that idea is, therefore, erroneous.  There is nothing in the agreement to show that the parties contemplated, that, upon default in any one of the payments, the vendors should have the property and the money already paid by the vendees.  There must be something in the contract clearly indicating such an intention to justify the supposition, that time is of the essence of the contract, and that, in default of payment of one instalment, all prior payments are to be forfeited.  The rule in this class of agreements is indicated in *Gibbs* v. *Champion*, 3 Hammond, 336 ; *Decamp* v. *Feay*, 5 Serg. & Rawle, 323 ; *Gillett* v. *Maynard*, 5 John. 87 ; *Raymond* v. *Burnard*, 12 John. 275.

Admitting that the vendor was authorized to retake the property upon default and hold it for his security, still—unless the contract was rescinded—upon the full payment of the price it would become the property of the vendees.  There is also, it is true, a stipulation that the vendor might " at option terminate the lease."  This, if it means anything more than to terminate the possession for the time being, is something in addition to retaking possession of the property, and may, perhaps, be construed into a right to rescind the contract.  If so, then the vendor might take the property and have it sold in a proper proceeding to pay the balance due him, or he might take possession, and at the same time rescind the contract.  But this involves no forfeiture of the amount paid, for to rescind the contract it would be necessary to return the twelve hundred dollars already received.  The party rescinding must put the other party *in statu quo*.  To rescind a contract is to annul it, and claim nothing under it.  In this case the vendor does not appear to have rescinded, but to have claimed both the property, and the money already paid in pursuance of it.  This he cannot do.  If the contract has been rescinded, the plaintiffs are entitled to recover the money paid.  If the contract was not rescinded, the vendees became entitled to the possession upon payment of the full amount due.

We have assumed that a tender was made, because the evi-

dence shows that fact, although it is not one of the facts found by the Court. Upon the view taken by the Court, a finding upon that point was not regarded as material. There was an exception for want of a finding on this point, although not strictly in proper form. A party requiring a finding upon a particular point should specify the point without dictating the terms of the finding. In this case, for instance, the appellants should have requested the Court to find, whether a tender of the amount due had been made, and when, etc. (*Hidden v. Jordan*, 28 Cal. 304, 305.)

The judgment must be reversed and a new trial had, and it is so ordered.