[L. A. No. 2516. Department One.—September 1, 1910.]

R. E. MUNCY, Appellant, v. W. C. BRAIN, Respondent.

CONDITIONAL SALE—GENERAL RULE—RETAKING UPON DEFAULT OF BUYER —ELECTION OF REMEDY.—As a general rule, where there is a contract which by its terms, or by the liberal interpretation to that end indulged by the court, constitutes an agreement for the sale of personal property, the title to pass only upon condition that the price is paid, and not till then, the title in the meantime remaining in the seller, possession being given to the buyer, and providing that the seller may retake possession upon default in payment, the seller, upon such default, is put to his election either to retake possession and reliquish all rights to the price, or to recover the price and relinquish the right to retake possession, and if he pursues one remedy he loses his right to the other.

ID.—APPLICABILITY OF RULE—CONCURRENT AND DEPENDENT CONDITIONS. —The general rule applies where the property is given into the buyer's possession by virtue of the contract of sale until the time when payment is to be completed, and the passing of the title to the buyer is concurrent with and dependent upon the payment of the price.

ID.—RULE INAPPLICABLE—INDEPENDENT RIGHT OF POSSESSION IN SELLER. —The general rule is inapplicable where the contract either declares that the seller shall retain the possession, or provides for its redelivery to him at a fixed date, different from the time of the completion of the sale and passing of title, and not dependent thereon. In such cases the seller may recover the price, and retain possession until full payment is made.

ID.—CONTRACT TO LEASE AND SELL AUTOMOBILE—BREACH—END OF LEASE—RIGHT TO ENFORCE RENT.—Where a contract in the form of a lease and final sale of an automobile made time of the essence, and provided three small payments of rental which were paid, and for a last payment of rent in the sum of $2537.50, on June 25, 1908, and for a termination of the lease and delivery of possession to the lessor on June 30, 1908, with the right thereafter if all rental was paid to

purchase the property for $6.25 on July 3, 1908, it was the absolute
and independent duty of the lessee to pay said large sum at the
time fixed, and to deliver possession to the lessor before final pay-
ment as agreed, and the lessor was entitled to enforce the unpaid
sum.

ID.—STOCK PLEDGED AS SECURITY FOR RENT—RIGHT OF SALE FOR UNPAID
RENT.—Where the lessee had transferred to the lessor five thousand
shares of stock as security for rent, the lessor, immediately upon
default of the lessee in the final payment of rent, as agreed, had the
right to enforce payment thereof by a lawful sale of the pledged
stock, and crediting the sum of one thousand five hundred dollars
realized from such sale upon such final payment.  The lessor was
within his contract rights when he thus enforced payment *pro tanto.*

ID.—ACTION FOR DAMAGES FOR CONVERSION OF STOCK—APPEAL BY PLAIN-
TIFF—NATURE OF CONTRACTS NOT INVOLVED.—Upon appeal by
plaintiff in an action to recover damages for the conversion of the
pledged stock so sold, the question whether the contract was in legal
effect a lease or a conditional sale is not involved, and need not be
determined.

ID.—EFFECT OF CONDITIONAL SALE.—If the contract made be supposed
to create a conditional sale, it would nevertheless be a sale upon the
conditions stated therein, and not upon any other terms or conditions.
If the named lessee be still entitled to buy, he can only do so upon
the terms, and at the price fixed by the contract; and the rights and
obligations of the parties to the contract are to be determined
thereby.

ID.—RIGHT OF POSSESSION OF AUTOMOBILE—CESSATION—FUTURE RIGHT
CONTINGENT.—Whether the contract be deemed a lease with a future
option to purchase, upon compliance with the terms of the lease, or
a conditional sale, the right of possession of the automobile in the
lessee or buyer ceased absolutely and unconditionally on June 30th.
Even the prompt and full payment of the sum to be paid June 25th
would not relieve the payer to deliver the automobile in good order
to the so-called lessor on June 30th.  The lessee or buyer could not
under the terms of. the contract again acquire possession of the
automobile until July 3d, in any event, and then only upon full
payment of the price, and the exercise of the final option given by
the contract.

ID.—RETAKING POSSESSION UNDER CONTRACT NOT INCONSISTENT WITH
RIGHTS OF PURCHASER.—The conduct of the seller in retaking pos-
session, under the terms of the contract, by suit or otherwise, was
not a violation of the rights of the buyer under the contract, nor
was it inconsistent with his right to purchase, which may exist not-
withstanding the fact that the seller has possession.

ID.—CONSTRUCTION OF CONTRACT AS LEASE—TIME OF ESSENCE—RIGHT
TO SELL PLEDGED STOCK.—If the provisions making time of the
essence of the contract of lease, with the option to purchase, were
strictly enforced, and are to be construed as limiting the option to

purchase to the very day fixed which was not then exercised, there would be no right to buy, and the money payable June 25th would be absolutely due as rent and not upon a purchase, and the lessor would have a clear right to sell the pledged stock for its payment.

ID.—CONSTRUCTION OF CONTRACT AS CONDITIONAL SALE—WAIVER OF TIME AS ESSENCE.—If the contract is to be construed as a conditional sale, then the provision making time of the essence, and requiring the option to buy to be exercised at the very day, would be waived by the seller when he elected to take part payment of the price after it was past due from the proceeds of the sale of the stock, and although he was entitled to hold the possession of the automobile after June 30th, he would hold it subject to the right of the purchaser to complete his purchase by paying the balance of the price after deducting the sum realized by the sale of the pledged stock.

ID.—ABSOLUTE LEGALITY OF SALE OF STOCK.—The sale of the stock was legal, whether the contract be construed as a lease or as a conditional sale, and is not, in either alternative, inconsistent with the right of the seller of the stock to take possession of the automobile and hold it, at least until a proper offer to buy be made by the purchaser.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, for Appellant.

Edward Winterer, and A. J. Sherer, for Respondent.

SHAW, J.—Appeal from the judgment upon the judgment-roll alone.

The plaintiff sued to recover damages in the sum of ten thousand dollars for an alleged conversion to his own use by the defendant of five thousand shares of corporate stock, alleged to belong to the plaintiff.

On December 18, 1907, the plaintiff and defendant entered into a series of contracts concerning an automobile belonging to the defendant. There were three documents, each dated and signed and appearing to be separate and distinct contracts, but they were executed simultaneously, as part of the same transaction, they bear the same date and they must all be considered together as constituting the entire contract between the parties.

By the document which we will designate as the first agree-

ment, Muncy leased or hired of Brain the automobile in question for a term ending on June 30, 1908.  Muncy paid to Brain $29.20 at the execution of the agreement, and agreed therein to pay him the further sums of $25 on January 16, 1908, $37.50 on March 16, 1908, and $2537.50 on June 25, 1908, all of which the agreement expressly declared were paid and to be paid for the rental, hire, and use of said automobile.  It further provided that if Muncy failed to pay said rent, or any part thereof when due, or to perform any of the agreements, conditions, or undertakings contained in that instrument, Brain might "demand, take and repossess said automobile, with or without process of law," and that at the expiration of said term Muncy would return and deliver the same to Brain in good order.  The last clause in this document was as follows:

"It is further understood by the parties hereto, that in the event said party of the second part, (Muncy), complies with all the terms of this agreement, the second party shall then (but not otherwise) have the right to purchase said automobile, and the said first party shall be required to transfer and sell said automobile to said party of the second part, as hereinafter agreed and set forth."  This was immediately followed by an attestation and date and the signatures of the two parties as in execution of the agreement.

The second agreement, the one referred to in the first one by the words "as hereinafter agreed and set forth," is as follows:—

"In consideration of one dollar and other good and valuable considerations to me in hand paid, I, hereby agree to and with R. E. Muncy, the said party of the second part, to the foregoing lease, that in the event he shall on his part well and truly perform and fulfill all the conditions of said lease and pay as they become due, the different installments of rent, and all other sums therein and herein agreed to be paid, that he will on the 3rd day of July, 1908, provided the said R. E. Muncy shall so desire sell and convey the said automobile described in said lease to the said R. E. Muncy, for the sum of $6.25 then in cash to be paid said undersigned as hereinbefore set out and agreed upon.

"It is expressly agreed and understood, however, that time shall be of the essence of this contract, and that unless all the conditions of the said foregoing lease shall have been fulfilled

and performed by the said R. E. Muncy, and the said $6.25 paid as aforesaid, then the privilege to purchase said automobile hereby granted shall be waived and forfeited.

"LOS ANGELES, CALIFORNIA, December 18th, 1907.

"W. C. BRAIN,

"R. E. MUNCY.

"The conditions of the above agreement are hereby accepted.

"LOS ANGELES, CALIFORNIA, December 18th, 1907.

"R. E. MUNCY."

The third agreement appears from its terms and from the findings to have been indorsed on or attached to another instrument whereby Muncy became the owner of the stock in controversy. The first agreement aforesaid was attached to the said third agreement and was referred to therein as "Exhibit A" and made a part thereof. This third agreement was, in effect, a pledge by Muncy to Brain of the five thousand shares of stock as security for the payment of the sums of money which Muncy had by the first agreement agreed to pay to Brain, that is to say, the rental accruing for the use of the automobile during the term of the lease thereof. It was signed by Muncy alone.

Muncy paid the small sums falling due in January and March, but did not pay the $2,537.50 due on June 25, or any part of it. Thereafter, on September 4, 1908, Brain sold the pledged stock at public auction in the manner required by law. (Civ. Code, secs. 3000 to 3005), to satisfy his demand for the aforesaid unpaid rent. To whom it was sold does not expressly appear, but as it is admitted that Brain was in possession of it after the sale we may assume that he was himself the purchaser, if the fact is material. The value of the stock did not exceed the amount of rent unpaid. Muncy did not pay the $6.25 mentioned in the second agreement as the price to be paid by him for the automobile as a condition of the sale thereof by Brain to him on July 3, 1908, but at some time before this action was begun (September 26, 1908), he offered to do so. On June 28, 1908, after Muncy's failure to pay the rent, Brain demanded possession of the automobile, which Muncy refused to deliver. He did not deliver the automobile to Brain on June 30, 1908, as the first agreement provided he should do, but retained possession thereof. On July 11, 1908, Brain, in an action of claim and delivery against Muncy, ob-

tained possession thereof.  Judgment in said action was there-
after given in favor of Brain.  After Brain sued for possession
of the automobile, Muncy demanded of him the possession of
the pledged stock, which was refused.  Thereupon Muncy,
claiming this to be an unlawful conversion of the stock to his
own use by Brain, began the present action to recover the
value thereof as damages for the alleged conversion.

Brain, by way of counterclaim, alleges that the stock sold
for only fifteen hundred dollars at the sale by him as pledgee,
and that after applying this sum on the rent there remained
unpaid a balance of $1,072.53, for which he asked judgment.
The court made no findings on the facts stated in this counter-
claim, but stated as a conclusion of law that defendant was
not entitled to recover anything thereon, and gave judgment
that plaintiff take nothing by his action and that each party
pay his own costs.

It is not asserted that the execution of these contracts was
induced or procured by any misapprehension of their effect,
or by fraud, mistake, coercion, or undue influence.  Muncy
entered into the transaction and signed them with accurate
knowledge of their terms.  His contention is that the several
instruments, constituting, as they do, but one contract, did
not provide for a lease of the automobile for a fixed term upon
a certain rental, with an option, available only after, and in
the event of, performance of the prescribed precedent condi-
tion, to buy the automobile for $6.25, but that, although in
form of the effect just stated, their true legal effect was to
provide for a conditional sale of the automobile for the price
of $2,635.70, being the aggregate of the several sums named
as rental and the $6.25 stated as the price in the third agree-
ment.

Upon this theory of the effect of the contracts he claims
that Brain had but two alternatives upon a failure of per-
formance by Muncy;  he could either take the automobile
back, or he could leave it with Muncy and obtain payment of
the price by a sale of the pledged corporate stock, but could
not, after having elected to retake the automobile, retain his
right as pledgee, or recover the amount due by the contract
nominally as rent, but really, as is claimed, as the price thereof.

The cases hold that where there is a contract which by its
terms, or by the liberal interpretation sometimes to that end

indulged by the courts, constitutes an agreement for the sale of personal property, the title to pass only upon the condition that the price is paid and not until then, the title in the mean time remaining in the seller, possession being given to the buyer, and providing that the seller may retake possession upon default in payment, the seller, upon such default, is put to his election either to retake possession and relinquish all right to the price, or to recover the price and relinquish the right to retake possession, and that if he pursues one remedy he loses his right to the other. (*Parke & Lacy Co.* v. *White River L. Co.,* 101 Cal. 37, [35 Pac. 442]; *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353, [42 Pac. 435].)

The question whether or not the transaction was, in legal effect, a lease or a conditional sale, is not necessarily involved in the determination of this appeal, and therefore we need not consider it. Conceding, for the sake of the argument, that it was a conditional sale, it would nevertheless be a sale upon the conditions stated in the contracts, and not upon any other terms or conditions. Although Muncy may even now have the right to buy, he can only do so upon the terms and at the price fixed by the contract, and, in the mean time, his right to possession of the automobile, his obligations to pay the sums agreed on, and the rights of Brain concerning the same, are all to be determined by the provisions of the contract in that behalf. The sum of $2,537.50 was to be paid on June 25. The obligation to pay it at that time was not dependent on any conditions, concurrent or otherwise, but was absolute, and such payment did not operate to transfer title. Immediately upon default in such payment, Brain became entitled to enforce payment, and this right was neither dependent nor concurrent upon the delivery or retention of the possession of the automobile, nor upon any other act or event. Brain was therefore within his contract rights when he enforced payment *pro tanto,* by a lawful sale of the pledged stock. With regard to the possession of the automobile, the provision was that it should be delivered to Brain on June 30th. Muncy's right of possession ceased on that day absolutely and unconditionally. The prompt payment of the $2,537.50 on June 25th would not relieve him from the obligation to deliver the automobile in good order to Brain on June 30th. He could not, under the conditions of the contract, again acquire a right to

possession until July 3, in any event, and then only upon full payment of the price and an exercise of the option given by the second instrument. He does not claim that he offered to exercise that option prior to the suit of Brain in claim and delivery, or that he ever, under the terms of the contract, gained a right to exercise it. Hence, he never was entitled to the possession after June 30th, and Brain was, from and after that day, entitled thereto. His conduct in retaking possession, whether by suit or not, was not a violation of the rights of Muncy under the contract. Nor was it inconsistent with Muncy's right to purchase. (*Miller* v. *Steen*, 30 Cal. 407, [89 Am. Dec. 124]; *Liver* v. *Mills*, 155 Cal. 463, [101 Pac. 299].) A right of the buyer to complete a purchase may exist, notwithstanding the fact that the seller has possession. If the provisions making time of the essence of the contract, and limiting the right to buy to the very day fixed, are to be taken literally and strictly enforced, then the other provisions are to be given like force and there was no agreement of sale at all, but a lease, accompanied by a mere option to buy, an option never exercised and dependent upon conditions which have never occurred, in which case the money would be due absolutely as rent and not upon a purchase, and Brain would have a clear right to sell the pledged stock for its payment. If they are not to be so construed or enforced, but taken as a conditional sale, then the provisions making time of the essence, and requiring the option to be exercised on the precise day fixed, were waived by Brain when he elected to take the price, after it was past due, and, although he was entitled to possession of the automobile after June 30th, by virtue of the provision to that effect, he would hold it subject to the right of Muncy to complete his purchase by paying the balance due Brain upon the price after deducting the sum realized by the sale of the pledged stock. (*Liver* v. *Mills*, 155 Cal. 463, [101 Pac. 299]; *Miller* v. *Steen*, 30 Cal. 407, [89 Am. Dec. 124].) In either alternative the sale by Brain of the pledged stock was lawful and not inconsistent with his right to take possession of the automobile and hold it, at least until a proper offer to buy was made by Muncy. The rule laid down in the decisions first above cited, that upon a conditional sale the seller cannot retake the property and also recover the contract price, applies where the property is given

into the buyer's possession by virtue of the contract of sale until the time when payment is to be completed and the passing of the title to the buyer is concurrent with and dependent upon the payment of the price. It does not apply where the contract declares that the seller shall retain the possession, or where, as here, it provides for its redelivery to him at a fixed date, different from the time for the completion of the sale and passing of title, and not dependent thereon. In cases of the latter character the seller may recover the price and retain possession until full payment thereof is made. There was, therefore, no unlawful conversion of the stock.

.The judgment is affirmed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.