[Civ. No. 28018.   Second Dist., Div. One.   Nov. 6, 1964.]

GARDENA VALLEY AIRPORT, INC., et al., Plaintiffs and Respondents, v. ALL AMERICAN SPORTS ENTERPRISES, INC., et al., Defendants and Appellants.

[Civ. No. 28019.   Second Dist., Div. One.   Nov. 6, 1964.]

ARTHUR L. SHARP, Plaintiff and Respondent, v. THOMAS H. HAYNES et al., Defendants and Appellants.

(Consolidated Cases.)

Bernard & Jaffe and F. Fillmore Jaffe for Defendants and Appellants.

Trope & Trope, Eugene L. Trope and Sorrell Trope for Plaintiffs and Respondents.

LILLIE, J.—This consolidated appeal is from separate judgments in each of two actions which (by stipulation) were consolidated for trial. Certain issues in the one action overlap issues in the other. In No. 28018 plaintiffs recovered monies due under a written lease of premises, located in the Gardena area, for use as an automobile race track and sports stadium; the judgment also declared that All American Sports Enterprises take nothing on its cross-complaint for damages arising from plaintiffs' asserted conversion of the subject personal property. In No. 28019 plaintiffs were given judgment for the deficiency due on a promissory note of defendant Haynes, secured by a chattel mortgage and guaranteed by him and another defendant, following a sale of mortgaged items; the judgment likewise denied any relief by way of cross-complaint for damages resulting from the same alleged conversion referred to in No. 28018.

The only issues formally set forth as requiring determination relate primarily to the claim that there was a conversion of the personal property after defendants defaulted in payment of their obligations. We summarize the evidence leading up to the assertion of this claim. On August 27, 1954, plaintiffs leased the subject premises to defendant All American Sport Enterprises for a term of three years ending August 31, 1957, with an option for an additional term of five years ending August 31, 1962; such option was in due time exercised. Pursuant thereto All American constructed a quarter mile race track with improvements necessary for the track's operation at a cost of more than $100,000. On October 4, 1958, the same parties executed another lease which cancelled the agreement of August, 1954, and further provided for the leasing of the same premises for a term of nine years ending August 31, 1967. This "interim" lease, as it is thus designated, was to remain in effect until a 50-year lease, an escrow for which was opened the same day, was finalized by the parties concerned. Among other benefits inuring to plaintiffs under the 50-year lease, they were to receive the sum of $30,000 realizable from a proposed public sale of stock in a newly formed corporation subject to the approval of the Corporation Commissioner. Almost a year later, in the latter part of 1959, the commissioner notified the parties to the escrow that he would not approve the issuance of a permit until the 50-year lease was recorded. Plaintiffs refused to consent to such recordation, mainly upon the grounds of All American's "weak" financial position; for example, there was evidence that the company was in arrears to the City of Gardena for license fees in the amount of $1,000 (representing $40 per event).

All American's unhealthy financial situation at the time in question is further illustrated by the following events: On November 25, 1958, the company then being in default in payment of rents and minimum guaranties, a promissory note in the sum of $25,000 was executed by All American in favor of plaintiff Sharp for rentals due and advances made; this note was guaranteed by Tom Haynes, the president of All American and one of the defendants in No. 28019. On the same day a chattel mortgage was also executed by All American to secure payment of its note to Sharp. All American having defaulted on the above note, on January 11, 1960, a renewal note for $27,800 (the additional $2,800 representing

interest) was executed by the company to Sharp—the guaranty of Haynes was continued, and he was joined as guarantor by the company's vice president, defendant Schooler. The renewal note was again secured by a chattel mortgage of the items listed in the predecessor instrument.

No payment of any kind was made on the renewal note. Thereafter litigation involved in the appeal in No. 28018 was commenced. Generally descriptive of the events occurring at or about that time are the following allegations in the answer to the cross-complaint: "On September 1, 1960, Cross-Complainant abandoned said mortgaged property. On September 2, 1960, said property was attached and taken into the possession of the Marshal pursuant to a writ of attachment issued in this action. On or about September 8, 1960, said Marshal relinquished possession of said property and Cross-Defendant, SHARP, thereupon took possession of same pursuant to the above mentioned provisions of said chattel mortgage for the purpose of foreclosing and selling all right, title and interest of Cross-Complainant therein. Cross-Defendant, SHARP, is now taking steps for the foreclosure and sale of said property pursuant to the terms of said chattel mortgage." Still another remedy was pursued by plaintiffs; thus, after the giving of the necessary three-day notice, plaintiffs on September 2 instituted an action in unlawful detainer. Subsequently a stipulated judgment was entered in this last mentioned proceeding. It decreed that the lease from plaintiffs to All American was terminated on September 2, 1960, and further declared that a forfeiture of said lease occurred on December 2, 1960.

Thereafter, commencing September 2 and on various subsequent dates, Sharp conducted automobile races at the subject address, making use of the items covered by the chattel mortgage. He apparently disregarded a letter from All American, dated September 21, 1960, to the effect that his use of the property and chattels was unauthorized. In November of that year the premises and personal property were leased by SHARP to California Jalopy Association for a weekly rental of $500. There was evidence that this weekly rental was paid to Sharp through October of 1961. For these and other related acts on the part of plaintiffs, each cross-complaint demanded that they be held responsible in damages.

■ We have concluded that the trial court correctly determined that there was no wrongful conversion of the

subject items. In the first place, "For an action in conversion it is necessary for the appellant to show that he has ownership of the [property] with a right to, or actual, possession." (*Eistrat* v. *Irving Lumber & Moulding, Inc.*, 210 Cal.App.2d 382, 387 [26 Cal.Rptr. 520].) See also *McCoy* v. *Northwestern etc. Co.*, 3 Cal.App.2d 534, 537 [39 P.2d 864].) In the present case appellants at the time of the alleged conversion had neither ownership of the property nor actual possession of it; indeed, their opening brief concedes that "All American did not, at that time, have the right of possession, but did have the incidence [*sic*] of ownership of said property and chattels," although it is immediately thereafter asserted that the company "had a vested interest therein, and as a consequence, could not demand possession of the property from Sharp . . . ." This latter assertion presumably purports to bring appellants within the rule that a demand by plaintiff before suit and a refusal by defendant are necessary to the maintenance of an action for conversion. (*Atwood* v. *Southern California Ice Co.*, 63 Cal.App. 343, 345 [218 P. 283].) In the circumstances of this case, however, any such demand would have availed appellants nothing. Respondents' right to possession of the chattels in controversy upon appellants' default is clearly established by the terms of the chattel mortgage, and contractual provisions to that effect have legal sanction. (*Summerville* v. *Stockton Mill. Co.*, 142 Cal. 529, 542 [76 P. 243].) Additionally, the record supports the inference deducible from the testimony of defendant Haynes that he and his associates relinquished possession of the premises in the face of mounting financial difficulties. Summed up, therefore, the denial of relief by way of cross-complaint was proper for this further reason: "Where the original possession is lawfully obtained, or there is an acknowledgment of the mortgagor's interest, the dominion exercised by the mortgagee is not unlawful and thus not a conversion." (*Kertz* v. *Paris*, 168 Cal.App.2d 67, 69 [335 P.2d 154].) As with the respondent in the *Kertz* case, it should be emphasized, respondents in the proceedings at bar never claimed to have owned appellants' property; the fact that respondents initiated a foreclosure sale indicates their recognition of the equity of redemption possessed by appellants.

The determination below can be sustained upon still another ground. As chattel mortgagees in possession after default, respondents had every right to protect their lien

rights thereunder. The conversion referred to in section 2910 of the Civil Code, cited by appellants, must consist of some act inconsistent with the continuance of the lien and equivalent to a denial or repudiation of it. "An act done to preserve and protect the property in order that it may remain subject to the lien, and which is equally beneficial to those having subordinate rights, and not in antagonism thereto, is not a wrongful conversion within the meaning of [§ 2910]." (*Summerville* v. *Stockton Mill. Co., supra,* at p. 543.) It follows, therefore, that the use of appellants' chattels by respondents' tenants was not a wrongful conversion; and it further follows, contrary to appellants' specific claims in that regard, that respondent Sharp was justified in using and leasing All American's property for a period of some 12 months prior to the foreclosure sale.

The foregoing discussion disposes of the only points formally stated to be issuable matters controlling the instant appeal; appellants' brief, however, raises other contentions to which we shall give brief attention. ▇ Without citation of authority, it is asserted that the interim lease of October 4, 1958, was executed without consideration. In this connection, section 1614 of the Civil Code declares that "A written instrument is presumptive evidence of a consideration." In view of the above presumption, and as provided by section 1615 (immediately following), the burden then lay with appellants to establish a want of consideration for the instrument in suit. Not only is there substantial support for the determination that appellants did not meet that burden, but respondents made an affirmative showing that the lease carried the consideration required by law. For example, the 50-year lease and the interim (or nine year) lease were executed on the same day. Appellants concede that there was consideration for the 50-year lease; since both instruments were manifestly executed in consideration of each other, there was consideration for the nine-year lease. As for the contention that this lease was entered into under a mistake of fact, it is sufficient to observe that no attempt was made by appellants over a period of almost two years to rescind or cancel it.

Sections 1614 and 1615 of the Civil Code also govern the claim that there is no consideration for the undertaking of defendant Schooler as guarantor. ▇ Additionally, section 2792 of the Civil Code states that "[w]here a suretyship obligation is entered into at the same time with the original

obligation . . . no other consideration need exist.'' In this regard, it appears that the original note ($25,000), executed on November 25, 1958, was cancelled by mutual agreement of the parties. Thereafter, on January 11, 1960, the renewal note ($27,800) was executed by All American; since it was guaranteed on the same date by Schooler, section 2792 is clearly applicable.

Finally, it is contended that the law was not complied with insofar as it provides for the posting of notice of sale under a chattel mortgage (Code Civ. Proc., § 692). ▉ It has been represented to us by respondents, which representation is not challenged by appellants in their closing brief, that the above issue was not raised during the trial; nor does it appear to be one of the issues set forth during pretrial proceedings in either action. In fairness to the trial court, we do not propose to consider matters thus presented for resolution (*Apra* v. *Aureguy,* 55 Cal.2d 827, 831 [13 Cal.Rptr. 177, 361 P.2d 897]) ; furthermore, *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410, 427 [258 P.2d 497, 37 A.L.R.2d 1363], appellants' principal authority for the claim advanced, involved a pledge and not a chattel mortgage—the rights and remedies of a pledgee differ in several respects.

Each judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.