CHALLENGE-COOK BROS., INC., Plaintiff and Respondent, v. A. G. LANTZ, Defendant and Appellant.

Arvin O. Robb and Haskell M. Goodman for Defendant and Appellant.

Leslie J. Morgan for Plaintiff and Respondent.

SIMS, J.—Defendant Lantz, who executed a guarantee of a lease under which plaintiff's assignor leased equipment to the lessee, has appealed from a judgment which awarded the plaintiff damages against the lessee, who defaulted, and Lantz.

The guarantor contends that there was no consideration for the guarantee; that repossession of the equipment following the lessee's default terminated the lease as a matter of law and limited the damages to the rentals accrued to that time; that the award of rental payments accruing after repossession, while the goods were retained, constitutes the enforcement of a penalty; and that the subsequent sale of the equipment constituted an election which barred the recovery of accrued rental payments, and limited plaintiff to the damages for

which express provision was made in the event of resale. None of these objections is found tenable on the record in this case and the judgment must be affirmed.

On May 29, 1962, plaintiff's assignor and Hydro-Tech Western Corporation, signed a lease for a trencher with an 8-inch bucket line, 10-inch side cutters, and an extra 16-inch bucket line, for a term of 36 months commencing May 15, 1962, and ending May 14, 1965, at a monthly rental of $280.80. The total rental for the 36-month period was $9,720, plus $388.80 for reimbursement of state and local use taxes. The lessee deposited a $1,000 security deposit, and, on June 18, 1962, Lantz signed a written guarantee in which he guaranteed the lessee's performance under the lease.

The lessee made 10 payments between June 13, 1962 and March 18, 1963, and defaulted in the payment due April 15, 1963. No further payments were made, despite demand on the lessee and the guarantor. On September 9, 1963, the plaintiff repossessed most of the equipment and incurred costs of $60.80.

Plaintiff commenced an action in the municipal court. In a first amended complaint filed June 16, 1964, it sought to recover accrued rental for the period from April 15, 1963 through September 15, 1963, in the sum of $1,684.80, expenses of repossession in the sum of $60.80, damages of $800 for withholding possession of the 16-inch bucket line, and reasonable attorney's fees.

On September 28, 1964, plaintiff sold the equipment for $6,000. On August 13, 1965, plaintiff filed its second amended complaint and a supplemental complaint in which it sought to recover $5,194.80, the rental payments for the period from April 15, 1963 through September 28, 1964, interest, costs of repossession and attorney's fees. Plaintiff's motion to file the foregoing and for transfer to the superior court was granted September 27, 1965.

The lessee defaulted, but Lantz, who had filed an answer to the original complaint in the municipal court, filed a new answer in the superior court to the supplemental complaint. He alleged that the lease terminated with the repossession on September 4, 1963. He acknowledged that $1,532 was then delinquent in rental payments, and alleged an offset for the $1,000 security deposit, leaving $532 due. He also alleged lack of consideration for his guarantee, and that the damages sought constituted a penalty or forfeiture.

At the trial February 3, 1966, plaintiff's finance manager

authenticated the lease, the guarantee, the documentary evidence of plaintiff's succession to the rights of the lessor, and the invoice for the costs of repossession. He further testified concerning the rent due and the amount received for sale of the equipment. The defendant offered no testimony.

*Consideration for the Guarantee*

 Lantz contends that the record shows that there was no consideration for his guarantee because the lease was executed almost three weeks before he signed the guarantee, and the first month's rent was already paid. He relies upon Civil Code section 2792 which provides: "Where a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation."

The record is silent as to the circumstances under which the lease and guarantee were executed. Plaintiff relies upon the presumption of consideration which arises from the fact a contract is in writing,[1] and the principle that the burden of showing a want of consideration is on the guarantor as the person seeking to invalidate it.[2]

In *Rusk* v. *Johnston* (1937) 18 Cal.App.2d 408 [63 P.2d 1167], the court stated: "The real conflict in the case centered around the question: Was the guaranty either given or promised before the note transaction was completed, or was it afterward? The trial court found, among other things, that the guaranty 'was executed and delivered without any consideration.' Under the circumstances this finding was one of an ultimate fact, not a conclusion of law. See *Bank of Italy* v. *Wetzel* (1927) 82 Cal.App. 240 [255 P. 254]; *First-Trust etc. Bank of Chicago* v. *Meredith* (1936) 5 Cal.2d 214 [53 P.2d

---

[1]Civil Code section 1614 provides: "A written instrument is presumptive evidence of a consideration."

Code of Civil Procedure, former section 1963, provided in part: "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: . . . 39. That there was a good and sufficient consideration for a written contract." (See Evid. Code, App., Legislative Committee Comment, Code Civ. Proc., § 1963 [4 Deering's Evid. Code Ann., p. 441]. Subdivision 39 was not continued because it was an unnecessary duplication of Civ. Code, § 1614.)

[2]Civil Code section 1615 provides: "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

958]. What was said to the contrary in *Drovers Nat. Bank* v. *Browne* (1928) 88 Cal.App. 716 [264 P. 265], did not have the approval of the Supreme Court at the time and is not consistent with its comments in *First-Trust etc. Bank of Chicago* v. *Meredith, supra,* and in its denial of a hearing in *Rivera* v. *Cappa* (1916) 29 Cal.App. 496 [156 P. 1016, 1017]. Want of consideration for the guaranty was properly pleaded. There is no contention that any consideration was given for the guaranty other than that to be found in the transaction in which the note and trust deed were given, to which the guaranty refers. There is substantial evidence that the guaranty was not requested nor given until after the note was executed and the consideration for the note passed. In the premises no consideration for the guaranty can be found. (§ 2792, Civ. Code; *Bank of Italy* v. *Wetzel, supra.*)'' (18 Cal.App.2d at p. 409. See also *Leonard* v. *Gallagher* (1965) 235 Cal.App.2d 362, 374 [45 Cal.Rptr. 211] ; and cf. *Gardena Valley Airport, Inc.* v. *All American Sports Enterprises, Inc.* (1964) 230 Cal.App.2d 478, 483 [41 Cal.Rptr. 93] ; *Fidelity & Deposit Co.* v. *Whitson* (1960) 187 Cal.App.2d 751, 755 [10 Cal.Rptr. 6] ; *Miller* v. *Smith* (1960) 179 Cal.App.2d 114, 116-117 [3 Cal.Rptr. 492] ; and *Pierce* v. *Wright* (1953) 117 Cal.App.2d 718, 722-723 [256 P.2d 1049].)

On a silent record it cannot be presumed that the facts are as related in *Rusk* v. *Johnston.* If the guarantee agreement in this case was requested and given orally, contemporaneously with the agreement to lease, the proviso although unenforceable as the promise to answer for the debt of another, until reduced to writing, was given for a consideration which in turn supports the subsequently executed written agreement. (See *Gardena Valley Airport, Inc.* v. *All American Sports Enterprises, Inc., supra,* 230 Cal.App.2d 478, 483; *Fidelity & Deposit Co.* v. *Whitson, supra,* 187 Cal.App.2d 751, 755; *Miller* v. *Smith, supra,* 179 Cal.App.2d 114, 116-117; and *Pierce* v. *Wright, supra,* 117 Cal.App.2d 718, 722-723.)

The defendant failed to meet the burden of coming forward with evidence in support of his defense. The court's conclusion that the guarantee was supported by consideration cannot be overturned.

*Effect of Repossession*

Paragraph 11 of the lease provides, in the event of default, ''Lessor, at its election, shall have any of the following remedies, or any other remedy given by law, without barring the latter election of any other remedy . . . :

"(a) . . . , without taking possession . . . require strict performance of all Lessee's obligations . . . as the same accrue; or

"(b) . . . repossess . . . and . . . terminate this agreement . . . without notice; or

"(c) . . . repossess . . . , with or without notice . . . and sue for the rentals due hereunder as they accrue, without notice; or

"(d) . . . repossess . . . and without terminating . . . hold [the equipment] until Lessee shall have complied with all his obligations . . . ; or

"(e) . . . repossess . . . , with or without notice . . . relet the same for the account of Lessee . . . ; or

"(f) . . . sell all or any part of the equipment . . . , with or without notice. . . ." Lessee shall be liable for the difference between $10,000 plus cost of sale, plus 25 per cent of sales price as overhead, minus the total amount realized on the sale, and minus the amount of rentals paid.[3]

The court found that the lease gave the lessor each of the six alternative remedies; and "that at any time between September 4, 1963 and September 28, 1964, when the equip-

---

[3]The full text of paragraph 11 reads: "In the event that Lessee defaults in any of the agreements herein by Lessee to be performed (time being hereby made expressly of the essence of this agreement), Lessor, at its election, shall have any of the following remedies, or any other remedy given by law, without barring the latter election of any other remedy herein contained or given by law: (a) Lessor, without taking possession of the leased vehicles or other property, may require strict performance of all of Lessee's obligations hereunder as the same accrue; or (b) Lessor may repossess all or any part of the leased vehicles or other property, with or without notice or process, and may thereupon terminate this agreement as to all or any part of said leased vehicles or other property without notice; or (c) Lessor may repossess all or any part of the leased vehicles or other property, with or without notice or process, and without reletting the same may retain possession thereof and sue for the rentals due hereunder as they accrue, without notice; or (d) Lessor may repossess all or any part of the said leased vehicles or other property, with or without process or notice, and without terminating any of Lessee's obligations hereunder, and hold the same until Lessee shall have complied with all his obligations hereunder then in default; or (e) Lessor may repossess all or any part of the leased vehicles or other property, with or without notice or process and may relet the same for the account of Lessee, at such rental and upon such terms and conditions as Lessor may deem proper for the entire remaining term of this lease, or for any shorter or longer period; in such event, at the option of Lessor, Lessee shall be liable immediately or at any later time for any difference between the aggregate of the unpaid sums accrued or thereafter to accrue under the terms hereof, and the net amount actually or presumptively to be realized (during the unexpired term of this lease) through such reletting; or (f) Since the parties understand and agree that any such reletting

ment was sold, the defendants could have regained possession of said equipment by paying all delinquent rentals that accrued; . . .'' It concluded that ''the lease was not terminated on September 4, 1964 [*sic*], when plaintiff repossessed said equipment,'' and that ''the plaintiff's act in repossessing and holding said equipment from September 4, 1963 until September 28, 1964, when said equipment was sold, was within the terms of said Lease, did not constitute a termination thereof, and that the rental accrued during said period does not constitute a penalty or forfeiture in violation of law.''

■■■ The guarantor attacks these conclusions. He contends that under the doctrine of election of remedies, the lessee's obligations under the lease were terminated when the lessor took possession of the leased equipment. (See, *Holt Mfg. Co.* v. *Ewing* (1895) 109 Cal. 353, 356 [42 P. 435]; *Smith* v. *Miller* (1935) 5 Cal.App.2d 564, 569 [43 P.2d 347]; 1 Witkin, Cal. Procedure (1954) Actions, § 46, pp. 542-543.) He relies upon analogies from the law of leases of real property (see 2 Witkin, Summary of Cal. Law (1960) Real Property, § 285, p. 1110), and the law of conditional sales (see *Smith* v. *Greenfield State Bank* (1963) 222 Cal.App.2d 869, 871-873 [35 Cal.Rptr. 579]; and *Chico Tractor, Inc.* v. *Coyle* (1963) 215 Cal.App.2d 483, 487 [30 Cal.Rptr. 196]) for the proposition that the lessor should not be permitted to pursue inconsistent remedies.

Section 1927 of the Civil Code provides: ''An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same.'' It has been held that ''a lessor cannot collect rent for the use of a chattel after he has repossessed himself of the chattel and terminated the lease.'' (*Automobile etc. Co.* v. *Salladay* (1921) 55 Cal.App. 219, 222 [203 P. 163].) The same opinion notes, however, ''He cannot, *at least in the absence of an express*

---

of the equipment herein leased would operate to deprive Lessor of a lessee to whom it could lease other equipment which it may now or hereafter own, Lessor may sell all or any part of the equipment herein leased, at public or private sale, with or without notice to or demand upon Lessee, and Lessee shall be liable to pay Lessor the total amount in paragraph 4 hereof agreed to be the full value of such equipment, plus the costs of such sale, including, without limitation, useful or necessary repairs of said equipment, salesman's commissions, and *25%* of said sales price as overhead, minus the total amount realized on said sale, and minus the amount of any rentals theretofore paid. The failure of Lessor at any time to exercise its rights under this paragraph in the event of any such default shall not affect its right and power to exercise such rights in the event of any subsequent default.''

*covenant to the contrary,* withhold the chattel and still collect rent money for its use.'' (*Id.,* italics added.)

It is generally held that a provision in a lease which allows the landlord to reoccupy the premises and relet, without releasing the tenant from his obligation is valid. (*Yates* v. *Reid* (1950) 36 Cal.2d 383, 385-386 [224 P.2d 8]; *Phillips-Hollman, Inc.* v. *Peerless Stages* (1930) 210 Cal. 253, 259-262 [291 P. 178]; *Weise* v. *Steinauer* (1962) 201 Cal.App.2d 651, 657 [20 Cal.Rptr. 295]; *Narcisi* v. *Reed* (1951) 107 Cal.App. 2d 586, 590 [237 P.2d 558].) In *Wiese* the court observed: ''Appellant's second contention is that the evidence required findings to the effect that respondent accepted his surrender of the leased premises and terminated the lease by repossessing the premises, making repairs and alterations and reletting them to new tenants for a period extending beyond the expiration date of his lease. The complete lack of merit in this contention is demonstrated by the decisions in *Yates* v. *Reid,* 36 Cal.2d 383 [224 P.2d 8] and *Narcisi* v. *Reed,* 107 Cal.App. 2d 586 [237 P.2d 558]. Both the last-cited decisions recognize the rule that ordinarily a reletting or any act inconsistent with the rights of the tenant under the lease amounts to an election to terminate the existing lease. They hold, however, that the lease may be so drawn as to contain provisions by which the application of that rule is avoided.'' (201 Cal.App. 2d at p. 657.)

Similarly a provision in a conditional sales contract which provides for repossession and resale without terminating the buyer's obligation has been upheld. (*Muncy* v. *Brain* (1910) 158 Cal. 300, 305-308 [110 P. 945]; *Matteson* v. *Equitable Min. & Mill. Co.* (1904) 143 Cal. 436, 438 [77 P. 144]; *Kreisa* v. *Stoddard* (1954) 127 Cal.App.2d 627, 631-632 [274 P.2d 164]; *General Motors Accept. Corp.* v. *Brown* (1934) 2 Cal. App.2d 646, 649 [38 P.2d 482]; e.g., *Jeanson* v. *Zangl* (1932) 119 Cal.App. 692, 696 [7 P.2d 314].)

In *Kreisa* v. *Stoddard, supra,* the court analyzed the situation as follows: ''The main question presented by appellant relates to the application of the doctrine of election of remedies to the facts presented. The purpose in applying this doctrine to a situation involving a conditional sales contract is to prevent the seller's obtaining both the property and the price, while the defaulting buyer suffers a forfeiture. However, the courts on numerous occasions have recognized that a seller's retaking or repossessing, under an express or implied contract provision, does not necessarily demand the conclusion that in

so doing he has elected to rescind; and, the application of the election doctrine must be modified by the facts of the particular case. As is said in Williston on Contracts, section 736: 'It is obviously possible, however, for the seller to resume possession of the goods without intending thereby to rescind the contract. He may, it would seem, resume possession without forfeiting or claiming to forfeit the buyer's right to pay any unsatisfied portion of the price and thereby perfect his ownership, but merely to increase his own security.'

"And so it has been held that, where a buyer has repudiated the contract, abandoned the goods, or in some other way manifested an intention not to fulfill his contractual obligations, the seller may, to secure the obligation owing to him, retake the property; and, after reselling the same and applying the proceeds to the outstanding balance, still be entitled to enforce the contract against the buyer for the payment of any deficiency. [Citations.]. . . .

"Although appellant criticizes respondents' citation of *Phillips* v. *Stark,* 186 Cal. 369 [199 P. 509], for the reason that the case did not involve a conditional sales contract, the language of the court is pertinent insofar as the question of recission by mutual consent is concerned. The court, at page 372, says: 'As to the retaking of possession, if the plaintiff had done so under such circumstances as to show an acquiescence on his part in the position taken by the defendants that the sale was off, there would at once have been a rescission by mutual consent. . . . But when the defendants not only refused to pay, but repudiated the contract and abandoned the property, the plaintiff's act in retaking possession of it certainly cannot be said to indicate any acquiescence on his part in the repudiation or any intent to end the sale. Whether he intended to insist upon the contract or not, the only sensible thing for him to do was to retake possession. He either had to do so for the protection of the property or allow it to be lost or destroyed for want of protection. He could, of course, have left it to its fate, but he was not required to follow any such hazardous and unreasonable course. The defendants thrust the necessity of taking possession upon him, and very plainly against his will, and without any thought on his part of acquiescing in their repudiation or himself terminating the contract of sale. Under these circumstances, there was no rescission.' '' (127 Cal.App.2d at pp. 631-632.)

There are no facts in the record which required the trial court to find that the lessee's obligation to pay rent was terminated as a matter of law by the lessor's repossession.

*Penalty or Forfeiture*

█ The guarantor contends that the alternative elective remedies are contrary to the laws of this state which prohibit any penalty or forfeiture. (Civ. Code, §§ 1670, 1671, 3302 and 3369.)[4] In support of this contention he cites authorities which indicate that a provision in a lease providing for the acceleration of future rents, in the event of the lessee's default, will not be enforced. (See *Ricker* v. *Rombough* (1953) 120 Cal.App.2d Supp. 912, 919 [261 P.2d 328]; and *Electrical Products Corp.* v. *Williams* (1953) 117 Cal.App.2d Supp. 813, 820-821 [256 P.2d 403].)[5]

In this case, however, there has been no attempt to collect rent for any period during which the lessor was not ready, able and willing to perform. The cases mentioned recognize the right to collect rental payments as they accrue. (See 120 Cal.App.2d Supp. at p. 917; and 117 Cal.App.2d Supp. at p. 821.) The fact that the lessor retook possession of the equipment for its own security (cf. Civ. Code, § 1927; and *Automobile etc. Co.* v. *Salladay, supra,* 55 Cal.App. 219, 222 as discussed above), does not of itself constitute a forfeiture or penalty. (See *Kreisa* v. *Stoddard, supra,* 127 Cal.App.2d 627, 631-632.)

*Effect of Sale*

█ One of the remedies reserved by the lessor purported to give it the right to sell the equipment and hold the lessee liable for the stipulated full value of the equipment ($10,000 by the terms of the lease), plus the costs of sale, salesman's

---

[4]Civil Code sections provide:

Section 1670: ''Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section.''

Section 1671: ''The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.''

Section 3302: ''The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.''

Section 3369 (portion): ''1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition. . . .''

[5]See also discussion *United States Leasing Corp.* v. *DuPont* (1967) *(Cal.App.) 64 Cal.Rptr. 120.

*A hearing was granted by the Supreme Court on January 17, 1968. The final opinion of that court is reported in 69 Cal.2d —— [70 Cal. Rptr. 393, 444 P.2d 65].

commissions, and 25 percent of the sales price as overhead, minus the total amount realized on said sale and minus the amount of any rental theretofore paid. (See fn. 3, *supra.*) Guarantor calculates the proper recovery under this section as follows:

| | |
|---|---:|
| Value of equipment | $ 10,000 |
| Cost of sale not proven | 00,000 |
| 25% of $6,000 as overhead | 1,500 |
| | $ 11,500 |
| Realized from sale | 6,000 |
| | $ 5,500 |
| Rental paid | 2,880 |
| | $ 2,620 |
| Security Deposit | 1,000 |
| Maximum Recoverable | $ 1,620 |

He also contends that of this sum, the $1,500 overhead is an arbitrary figure and should not be allowed in the absence of proof of actual expense or damage. (See *Electrical Products Corp.* v. *Williams supra,* 117 Cal.App.2d Supp. 813, 820-821.) He concludes that the maximum liability of the lessee, and therefore that for which he can be held is $120.

It further appears that under the judgment of the lower court, the lessor will in effect recover $4,135.60 in excess of the stipulated value of the equipment.[6]

The disparity between the foregoing figures is misleading. The latter sum should be compared with what the lessor would have received if the lessee had performed the agreement. In that event, lessor would have collected rental payments of $10,108.80 for the period terminating May 14, 1965, and would have been entitled to a return of the equipment and to its then salvage value. No evidence was adduced as to what the salvage value of the equipment might have been

---

[6]Guarantor computes this sum as follows:

| | |
|---|---:|
| Sale of equipment | $6,000.00 |
| Rent—paid by tenant | 2,880.00 |
| Security Deposit | 1,000.00 |
| Judgment for Delinquent Rent | 4,255.60 |
| Total | $14,135.60 |
| Agreed Value of Equipment | 10,000.00 |
| Profit | $4,135.60* |

*(There should be deducted $60.80 expended for costs of repossession.)

eight months after it was actually sold, but it is not unreasonable to assume that it would have been more than a nominal sum.

Plaintiff has recovered no more than the rentals which accrued during a period when the lessee, or guarantor on lessee's behalf, was entitled to and could have secured possession of the equipment upon payment of the stipulated rent. The election to so proceed lay with the lessor, and neither the lessee nor the guarantor can claim the right to a more favorable measure of damages in the absence of a penalty or forfeiture.

Lessor's assignor has requested an allowance of additional attorney's fees, for which provision is made in the lease, in the event of affirmance. The provision is applicable to services rendered on appeal in enforcing the lease. (See *Fidelity & Deposit Co.* v. *Whitson, supra,* 187 Cal.App.2d 751, 759.)

The judgment is affirmed. The trial court is directed to determine a reasonable attorney's fee for services on appeal and to add such fee to the principal amount of the judgment.

Molinari, P. J., and Elkington, J., concurred.